# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-0218

HARMON CARTER, JR., APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 20, 2013                    Decided May 20, 2014)

*Heather Vanhoose* of Parkersburg, West Virginia, was on the brief for the appellant.

*Ronen Morris*, with whom *Will A. Gunn*, General Counsel; *David L. Quinn*, Acting Assistant General Counsel; and *Leslie C. Rogall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, HAGEL and MOORMAN, *Judges*.

HAGEL, *Judge,* filed the opinion of the Court. KASOLD, *Judge*, filed an opinion concurring in part and dissenting in part.

HAGEL, *Judge*: This case returns to the Court following a decision by the Board of Veterans' Appeals (Board) that was issued in response to a July 2010 Court order granting a joint motion for remand in a previous appeal (Docket Number 10-0545) involving the same claim. Harmon Carter, Jr., now appeals through counsel the resulting February 18, 2011, Board decision that again denied entitlement to VA disability benefits for degenerative disc disease of the lumbosacral spine. Mr. Carter continues to be represented by the same counsel who represented him in the prior proceeding and who negotiated and signed the joint motion for remand on his behalf in the prior appeal. The Secretary has conceded, and the Court so finds, that Mr. Carter's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). On July 12, 2013, the matter was submitted to a panel of the Court to consider an issue of first impression: When

the appellant is represented by an attorney, can a joint motion for remand of an appeal to the Board limit the scope of the Board's independent duty to search the record for issues reasonably raised by the record? Oral argument was held on November 20, 2013.

We now hold that where an attorney-represented appellant enters into a joint motion for remand identifying specific Board errors, the terms of that remand can be considered a factor when determining the scope of the Board's duty to search the record for other issues that are reasonably raised by it. We also hold that when we apply this rule to the facts presented here, the terms of the joint motion for remand of the prior appeal (Docket Number 10-0545) were sufficient to require the Board on remand to once again review the record to determine if there were any issues reasonably raised even though not specified by the joint motion.

## I. FACTS

Mr. Carter served on active duty in the U.S. Army from November 1965 to November 1967. There is some evidence in the record that Mr. Carter had a preexisting low-back disability at the time he entered service. There also is evidence that Mr. Carter was treated for low-back pain during service. The medical examination administered at the time of his separation from service, however, revealed no abnormalities of the spine.

In July 1989, Mr. Carter sought private treatment for low back pain and filed a claim for VA benefits for that disability. A VA regional office denied this claim in October 1990. Mr. Carter appealed that decision to the Board and requested a hearing. Record (R.) at 660.[1] It is unclear from the record of proceedings what actions were taken between 1990 and 2005, but Mr. Carter makes no argument that the appeal to the Board was not adjudicated.

In May 2005, Mr. Carter sought to reopen his previously denied claim for benefits. In August 2005, the regional office denied the claim because it found that the evidence submitted was neither new nor material.

Mr. Carter appealed the regional office decision, submitting in support of the appeal November 2005 and June 2006 letters from his private physician, Dr. Louis Keppler. Both of these

---

[1] On October 29, 2013, the Secretary filed a substitute record of proceedings. All citations to the record in this opinion refer to the substitute record of proceedings.

letters opined that Mr. Carter's low back disability, although present when he entered service, was aggravated by service to a significant degree.

In May 2006, Mr. Carter underwent a VA examination administered by Gene L. Duncan, M.D. In his report, Dr. Duncan found that Mr. Carter's current low back disability was not incurred in or aggravated by his service. R. at 426. The regional office reopened Mr. Carter's claim in July 2006 and denied it on the merits. R. at 256. Mr. Carter filed a Notice of Disagreement shortly thereafter. As a result of Mr. Carter's appeal, VA conducted another medical examination in November 2007. That exam was administered by Nurse Subbarao, B.N. R. at 217. Nurse Subbarao reached the same conclusion as did Dr. Duncan.

In September 2009, the Board denied Mr. Carter's claim, and he appealed to the Court. In March 2010, attorney Heather Vanhoose entered an appearance at the Court as counsel on behalf of Mr. Carter (Docket Number 10-0545). That same month, Attorney Vanhoose requested a copy of Mr. Carter's claims file. In June 2010, Mr. Carter, through Attorney Vanhoose, entered into a joint motion for remand. In that motion, the parties agreed that the September 2009 Board decision contained two errors: (1) The Board failed to provide adequate reasons or bases for discounting favorable private medical evidence and (2) the Board failed to provide adequate reasons or bases for rejecting lay statements from Mr. Carter and his wife. R. at 44-45. The Clerk of the Court granted the parties' motion in July 2010, incorporating the terms of the joint motion by reference.[2] At the time that the parties entered into the joint motion for remand, Attorney Vanhoose had not yet received the claims file.

In August 2010, following the joint motion for remand, the Board sent a letter to Mr. Carter,[3] notifying him that the case was returned to the Board and that he had 90 days to submit additional argument or evidence. *See* R. at 34-37 (hereinafter "90-Day Letter").[4] The front page of the February

---

[2] *See* U.S. VET. APP. R. 45(g) (stating that the Clerk of the Court may act on joint motions to remand a case).

[3] In addition to Mr. Carter, the letter was also sent to Mr. Roy Spicer of Disabled American Veterans, the veterans service organization that was Mr. Carter's former representative. R. at 36. It was not, however, sent to Attorney Vanhoose *at that time*.

[4] The 90-Day Letter relates to a requirement of 38 C.F.R. § 20.1304. The notice provided in this letter and its attached "90-Day Letter Response Form" varies in a significant way from the text of § 20.1304. That regulation provides, regarding the period to submit new evidence or argument, that "[a]n appellant and his or her representative, if any, will

2011 Board decision listed Disabled American Veterans as Mr. Carter's representative. However, the notice letter transmitting the February 2011 Board decision, to which a copy of the decision was attached, was annotated to indicate that the letter was sent to Mr. Carter as well as his representative, Attorney Vanhoose. The notice letter does not bear the name of Disabled American Veterans. R. at 2-3. Attorney Vanhoose contends that she did not receive a copy of the Board decision at that time, and the Secretary has conceded this issue.

On December 13, 2010, VA sent Attorney Vanhoose Mr. Carter's claims file. The claims file included a copy of the 90-Day Letter, previously sent to Mr. Carter in August 2010. Attorney Vanhoose did not submit any new evidence or raise new arguments on behalf of Mr. Carter to the Board.

On February 18, 2011, 68 days after the date on which the parties agree that Attorney Vanhoose received the 90-Day Letter as part of the claims file, and 227 days after the Court granted the joint motion for remand, the Board issued the decision on appeal, readjudicating Mr. Carter's low back claim as specified in the Court's remand order. The Board found that Mr. Carter's low back disability preexisted service and that his disability had not been permanently worsened during service. The Board specifically considered, but then rejected, favorable private medical evidence, including Dr. Keppler's opinions, finding them not probative because they were based on Mr. Carter's self-reported medical history, which the Board found was clearly contradicted by the evidence of record. The Board also found both Mr. Carter's and his wife's lay testimony regarding aggravation of his low back disability to be vague and inconsistent with the medical evidence, and thus not credible or probative. The Board denied Mr. Carter's claim, and this appeal followed.

In this, Mr. Carter's second appeal of an adverse decision on the same claim, he identifies three purported errors. Mr. Carter asserts that the Board (1) "failed to adjudicate the theory of direct

---

be granted a period of 90 days following the mailing of notice to them that an appeal has been certified to the Board for appellate review and that the appellate record has been transferred to the Board, *or until the date the appellate decision is promulgated by the Board of Veterans' Appeals, whichever comes first, during which they may submit . . . additional evidence.*" 38 C.F.R. § 20.1304 (a) (2013) (emphasis added).

Notably, § 20.1304(c), although not mentioned in the 90-Day Letter, provides that the Board may issue its decision before the 90 days from the notice of transmission of the record to the Board. The parties did not raise this point in their briefs or at oral argument. Thus, the Court will not address the prejudicial impact, if any, it may have had in this case. While no provision of § 20.1304 applies to a remand from the Court to the Board, the Court understands that VA's routine practice is to send a "90-day letter" when a case is remanded to the Board by this Court.

4

service connection" of his back disorder, (2) "failed to seek clarification of a private medical opinion," pursuant to *Savage v. Shinseki*, 24 Vet.App. 259, 269-70 (2011), and (3) "erred by relying on inadequate VA medical examinations." Appellant's September 4, 2012, Brief (Br.) at 4, 8-9.

## II. THE PARTIES' ARGUMENTS

On appeal, Mr. Carter argues that the Court should address the three additional purported errors in the first instance and set aside the February 2011 Board decision. Mr. Carter asserts that the arguments regarding the three new errors, which he now raises before the Court, were reasonably raised by the record, thus the Board had an independent duty to consider and adjudicate them, regardless of the terms of a joint motion for remand, and that failure to do so is error requiring another remand to the Board. He further contends that there was insufficient notice and opportunity to submit additional argument and evidence to the Board on remand.

The Secretary argues that, when a claim is remanded by the Court on the basis of a joint motion for remand, the Board, on remand, is not required to conduct another review of the entire record with a view toward identifying issues not specified in the joint motion. In this case, the Secretary asserts that, because Mr. Carter did not submit any arguments to the Board subsequent to the Court's granting of the July 2010 joint motion for remand, he is precluded from raising new issues or argument in this judicial appeal.

On October 24, 2013, the National Veterans Legal Services Program (Amicus) filed an amicus curiae brief with the Court to address the broader implications of a Court decision regarding joint motions for remand. Amicus asserted that "[t]he scope of a [joint motion for remand] should *never* be a factor in determining the scope of the Board's duties on remand or whether the doctrine of exhaustion of administrative remedies should apply." Amicus Curiae Br. at 2. The reasoning behind this assertion is three-fold: (1) based on the Court's current case law, in *Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order), and *Best v. Principi*, 15 Vet.App. 18 (2001) (per curiam order), joint motions for remand "secure[] the most expeditious relief for the appellant and conserve[] judicial resources," and are "often the optimal course of action for both the appellant and the Court," *id.* at 4; (2) the Board has an independent duty to address arguments reasonably raised in the record, regardless of the terms of a joint motion for remand, *Id.* at 6; and (3) the Secretary's

position would result in fewer settlements and increased consumption of scarce judicial resources, *Id.*

In response to the Amicus brief, the Secretary first argues that, if the Board is "required to sua sponte scour the record for every potential issue as if the joint agreement did not exist," then joint motions for remand would no longer be efficient and there would be no reason for the parties to set out specific instructions for the Board regarding the terms of the agreement. Secretary's Response to Amicus Curiae Br. at 2. The Secretary further asserts that the theory proposed by Amicus is misguided because "[a]n appellant's ultimate interest is not in running the hamster wheel of remands but in securing benefits to which he or she is entitled." *Id.* at 5. The Secretary contends that his "position favors fuller discussions and negotiations between represented parties, and encourages appellants to advance arguments on remand to the Board. The long-term result of more fully delineating the issues on appeal and identifying those issues to the Board will result in fewer subsequent appeals to the Court." *Id.* Second, the case law set forth in *Best* and *Mahl* relates to remands by the Court, which should be treated differently than remands based on joint motions for remand.

At oral argument, the Secretary stated that a joint motion for remand is "an agreement, it is a compromise, it is a strategic compromise between the parties entered into in a purely adversarial system. It is entered into by attorneys. An attorney has every right to concede or to give up a particular point in hopes that the outcome is more desirable." Oral Argument at 25:00-26:10, *Carter v. Shinseki*, U.S. VET. APP. NO. 12-0218 (Argued Nov. 20, 2013) (available at http://www.uscourts.cavc.gov/oral-arguments_audio.php). In contrast, remands not predicated on a joint motion for remand–in which there is no agreement between the parties and the Court has discretion to decide cases on the narrowest possible grounds–leave it to the parties or the Board to resolve the issues on remand. Finally, the Secretary points out that the exhaustion doctrine is entirely discretionary and requires a case-by-case analysis. *See* Secretary's Supplemental Br. at 14 (*citing Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000)).

## III. ANALYSIS

### A. Effect of Attorney-Represented Joint Agreement Embodied in Joint Motion for Remand

#### 1. Opportunity to Submit Additional Argument or Evidence on Remand

It is undisputed that Mr. Carter and his representative were entitled to submit additional argument or evidence to the Board on remand. The July 2010 joint motion for remand stated, "On remand, [Mr. Carter] should be free to submit additional evidence and argument regarding his claim. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order)." R. at 46. Additionally, at oral argument, the Secretary acknowledged that "the appellant is always free to present new arguments and submit additional evidence [on remand]." Oral Argument at 39:30; *see also* 38 C.F.R. §§ 19.37 (2013), 20.1304(a). It is further undisputed that between the date on which the Court granted the joint motion for remand on July 6, 2010, and the date of the Board decision on February 18, 2011, Mr. Carter did not raise any new arguments or present any new evidence to the Board.

#### 2. Arguments or Issues Reasonably Raised by the Record

Mr. Carter argues that the Board always has a duty to consider and adjudicate arguments reasonably raised by the record regardless of the terms of a joint motion for remand and regardless of whether additional argument or evidence has been submitted on remand. Amicus agrees, stating that "[t]he scope of a [joint motion for remand] should *never* be a factor in determining the scope of the Board's duties on remand or whether the doctrine of exhaustion of administrative remedies should apply." Amicus Curiae Br. at 2. The Secretary argues that the terms of a joint motion for remand limit the Board's requirements on remand, and the Board need only address issues raised in the joint motion for remand or any additional arguments or evidence presented to it on remand.

This argument, specifically raised by the parties, requires the Court to determine the breadth of the Board's obligations following a joint motion for remand, as well as the Court's discretion to address or refuse to address arguments raised for the first time on appeal to the Court.

##### i. History of the Exhaustion Doctrine

The issue of whether the Court should consider arguments raised before it in the first instance was addressed in *Maggitt*. In that case, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that this Court has jurisdiction to hear arguments presented to it in the first instance,

7

provided that it otherwise has jurisdiction over the claim. The Federal Circuit determined that, although this Court *may* hear arguments raised for the first time on appeal, "it is not compelled to do so in every instance," and can consider, refuse to hear, or remand arguments presented to it in the first instance. 202 F.3d at 1377. The determination of whether to invoke the exhaustion of administrative remedies doctrine against a party is case-specific: "The test is whether the interests of the individual weigh heavily against the institutional interests the doctrine exists to serve. . . . Those institutional interests are, in the main, to protect agency administrative authority and to promote judicial efficiency." *Id.* The Federal Circuit continued, stating that "the decision whether to invoke the doctrine is a matter of discretion" and that this Court "is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case." *Id.* at 1378.

In *Robinson v. Peake*, this Court was again presented with a question of "issue exhaustion" when a theory (or argument) was raised by the appellant for the first time on appeal. 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). The Court determined that, because proceedings *before VA* are *nonadversarial*, "the Board's obligation to analyze claims goes beyond the arguments explicitly made." *Id*. On appeal, the Federal Circuit held that the Board is obligated to consider arguments or issues reasonably raised by the record, even if not raised by the claimant, and suggested that the Board errs if it fails to do so. *Robinson*, 557 F.3d at 1361.

In *Massie v. Shinseki,* 25 Vet.App. 123, 130 (2011), this Court noted the "uncertainty" created by the Federal Circuit's failure to discuss *Maggitt* in its decision in *Robinson*. *Maggitt*, which was decided nine years before *Robinson*, stated clearly that the Court could, based on the exhaustion doctrine, refuse to hear arguments raised for the first time on appeal to the Court. *Maggitt*, 202 F.3d at 1377 (noting that the Court is "not compelled" to hear arguments raised for the first time on appeal "in every instance"). However, the language in *Robinson* could be read to indicate the opposite. *Robinson*, 557 F.3d at 1362 (holding that, once an issue has been expressly raised before the Board, the Board is required to consider any other theories reasonably raised by the record). This "uncertainty" arises where the Board has failed to address an argument reasonably raised by the record, but *not* raised by counsel before the Board, and raises the question of whether the Court maintains discretion to refuse to hear such an argument if raised for the first time on appeal.

8

The appellant in *Massie*, who was represented by the same counsel throughout the entirety of the appeal, raised an issue for the first time on appeal to the Court. The Court determined that VA's interest in having a fair and full opportunity to consider all of the appellant's theories outweighed the appellant's interests in having his arguments heard for the first time on appeal to the Court. The appellant's "attempt on appeal to this Court to obtain a remand by presenting a different theory dependent upon different provisions of law would, if successful, only perpetuate the ever-increasing 'hamster-wheel reputation of veterans law.'" 25 Vet.App. at 128 (quoting *Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2006)). On appeal, the Federal Circuit decided the case on other grounds and stated, "we need not address the [Court of Appeals for Veterans Claims] discussion of exhaustion or the effect of *Maggitt* on this case." *Massie v. Shinseki*, 724 F.3d 1325, 1329 (Fed. Cir. 2013).

Before the Court now is the issue of whether a joint motion for remand can limit the Board's responsibility with regard to review of the record on remand and how this impacts the Court's exercise of discretion with regard to the exhaustion doctrine.

## ii. Joint Motion for Remand

A joint motion for remand, when drafted properly, identifies the essential, undisputed facts necessary for the adjudication of the claim; the relief sought; and most importantly, clear instructions to the Board as to what it is required to address, and what actions it is required to take, on remand. This increases both administrative and judicial efficiency. Joint motions for remand are inherently different than Court remands under *Best* and *Mahl* because they are negotiated and agreed to by adverse, consenting parties. It is the parties' responsibility to "enumerate[ ] clear and specific instructions to the Board" in the drafting of a joint motion for remand. *Forcier v. Nicholson*, 19 Vet.App. 414, 426 (2006). Further, it is well settled that piecemeal litigation is not favored. *See Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation."), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992); *see also Gen. Elec. Co. v. Int'l Trade Comm'n*, 692 F.3d 1218, 1220 (Fed. Cir. 2012) (quoting *McLish v. Roff*, 141 U.S. 661, 665-66 (1891) ("From the very foundation of our judicial system the object and policy of the acts of congress in relation to appeals

9

and writs of error . . . have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.")). As the Federal Circuit recently stated, "'[W]here litigants have once battled for the court's decision, they should be neither required, nor without good reason permitted, to battle for it again.'" *Dixon v. Shinseki*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

A joint motion for remand is an effective tool for identifying errors and speedily and efficiently resolving a veteran's claim. Properly used, it benefits the appellant, the Secretary, and the Court. Improperly or negligently used, however, it has just the opposite effect on each of these entities, in that it results in the waste of resources for the Court and the Secretary and causes an unnecessary delay in resolving the matters complained of by the appellant.

The crux of the issue now before the Court is: Whether a veteran, through counsel, may make a strategic decision to enter into an agreement with the Secretary that tailors the Board's duties on remand, in an effort to adjudicate the appeal more expeditiously. The answer is, it depends upon the specificity of the agreement interpreted in the context of other facts present in the appeal. The Court finds the Federal Circuit's holding in *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999), instructive. There, the Federal Circuit agreed with other courts that had held that "the failure of an appellant to include an issue or argument in the opening brief will be deemed a waiver of the issue or argument." *Id.*; *see also Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001) ("It is well settled that an appellant is not permitted to make new arguments that it did not make in its opening brief."). When parties enter into a joint motion for remand, they imply that the terms of the agreement will control.

The current facts are notably distinguishable from those presented in *Maggitt*, *Robinson*, and *Massie* because those cases did not involve a joint motion for remand; however, those cases are instructive. Specifically, the Court will consider the principles described in *Maggitt* regarding the Court's discretion in applying the exhaustion doctrine as applied within the context of a joint motion for remand, where the appellant is represented by counsel. In this regard, the terms of the joint motion for remand will have a bearing on what might otherwise be reasonably raised by the record. The Board's duty to consider issues reasonably raised by the record must be viewed in light of the

10

terms and scope of the joint motion and the fact that attorneys are presumed to know their case and to tailor their pleadings based on the facts and law. *Cf. Robinson*, 21 Vet.App. at 554 (noting that "the presence of [an] attorney [ ]throughout the appeals process before the agency is a significant factor" and further stating the "[w]here an attorney uses terms of art that make sense in the context used, the Board may reasonably conclude that there is no ambiguity to be resolved with a sympathetic reading or a liberal construction of the pleadings."); *see also Strickland v. Washington*, 466 U.S. 668, 690 (1984) ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

Thus, when an attorney agrees to a joint motion for remand based on specific issues and raises no additional issues on remand, the Board is required to focus on the arguments specifically advanced by the attorney in the motion, *see Forcier*, 19 Vet.App. at 426, and those terms will serve as a factor for consideration as to whether or to what extent other issues raised by the record need to be addressed. Indeed, we are not ignorant of the fact that there often are issues not raised by an attorney because, based on his or her full understanding of the case, the issue is not favorable to the client or otherwise is frivolous. *Cf. Strickland*, 466 U.S. at 690; *Robinson*, 21 Vet.App. at 554.[5]

### iii. Application

The question thus presented is whether the language in the July 2010 joint motion for remand is clear and specific enough to instruct the Board of its responsibilities on remand and for the Court to ascertain whether the agreement was followed. *See Forcier*, 19 Vet.App. at 426 (noting that parties' failure in a joint motion for remand to "state clearly the purpose of the remand and to set forth detailed directions to describe the action the Board should take upon remand" can result "in terms too vague and ambiguous to give rise to any further Board duties"). The Court concludes that the instructions in the joint motion at issue were sufficiently clear and precise to require the Board on remand to address arguments reasonably raised by the record.

---

[5] Of course, if, for example, after a joint motion for remand is granted by the Court, new law is decided on an issue that was encompassed within the joint motion for remand or if the Board fails to provide sufficient reasons or bases for its decision on remand regarding the issue(s) it was obligated to address by the joint motion for remand, those issues may be raised to the Court on appeal. Other than the argument based on *Savage*, discussed below, Mr. Carter raises no arguments regarding the Board's reasons or bases for its decision.

In examining the July 2010 joint motion for remand, the Court finds that the parties agreed that the September 2009 Board decision contained two errors which they, by implication, considered potentially prejudicial: (1) The Board failed to provide adequate reasons or bases for discounting favorable private medical evidence and (2) the Board failed to provide adequate reasons or bases for rejecting lay statements made by Mr. Carter and his wife. R. at 44-45. However, the joint motion further provides that "the Board should fully assist [Mr. Carter] with his claim *by reexamining the evidence of record* and seeking any other evidence that is necessary to support its decision. *See Fletcher v. Derwinski*, 1 Vet.App. 394 (1991)." R. at 46 (emphasis added). This is about as clear an expression of an enforceable provision as can be identified. As discussed above, the parties could have limited the Board's duties on remand by using clear language describing the limitation. The terms used would need to be sufficiently clear to be understood by the Board and, should the Board's compliance be questioned, to be enforceable by the Court. Here, however, the parties chose to require the Board to examine the entire record for any issues reasonably raised therein.

iv. Mr. Carter's Three Newly Raised Arguments

The Court will now address Mr. Carter's three assertions of Board error: Whether the Board (1) failed to adjudicate his claim based on the theory that he is entitled to benefits on a direct basis, (2) erred by relying on inadequate VA medical opinions, and (3) failed to seek clarification of a private medical examination report. The Court will review these issues based on the record as a whole, including the terms of the joint motion for remand.

There is no dispute that upon his entry to service, the Army noted that Mr. Carter had a back condition. The record reflects that Mr. Carter's claim for benefits has been processed as a claim for aggravation of that back condition. In support of his argument that a claim for benefits on a direct basis was reasonably raised by the record, Mr. Carter points to an in-service medical record dated January 31, 1966, noting an injury to the L-5 vertebra. He asserts that this is an injury separate from the back condition that pre-existed service and that it occurred when he fell off the back of a "5-ton truck on December 22, 1965." Appellant's Initial Br. at 5-6 (citing R. 693-94).

The record, however, reflects that Mr. Carter reported falling off a 5-ton truck on December 22, 1966, close to 11 months after the January 1966 notation of an L-5 injury. Moreover, as the Secretary points out, a statement from Mr. Carter's private doctor noted that his L-5 condition

"pre-dated his service time." R. at 296. Finally, Mr. Carter did not raise the issue of entitlement to benefits on a direct basis on remand. The joint motion for remand specifically provided that Mr. Carter "contends that his low back disorder was *aggravated* by service." R. at 43 (emphasis added); *see also* R. at 45 ("Moreover, in its analysis, the Board noted that [Mr. Carter] and his spouse contend that his low back disorder was aggravated during military service."). Nothing in the joint motion indicates that Mr. Carter's back injury was incurred in service.

Given the scope of the joint motion for remand and the scant record evidence possibly raising the issue, Mr. Carter fails to demonstrate that his claim for benefits for his back disorder on a direct basis was reasonably raised by the record or that the Board erred by not addressing this claim. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal); *see also Robinson*, 557 F.3d at 1362.

With regard to Mr. Carter's second argument, the Court similarly finds that the Board did not err by failing to sua sponte address whether the May 2006 and November 2007 VA examination reports were inadequate based on a now-alleged failure of the examiners to consider Mr. Carter's lay statements upon separation from service.[6] Here, the record reflects that both VA examiners reviewed the record in forming their opinions and, in the absence of clear evidence to the contrary, medical examiners are presumed to be competent to render such opinions and the Board is entitled to rely on their reports absent a challenge thereto. *See Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011); *Rizzo v. Shinseki*, 580 F.3d 1288, 1290-91 (Fed. Cir. 2009). In light of this fact, the Court concludes that Mr. Carter fails to demonstrate that any inadequacy in these reports was reasonably raised by the record. *See Robinson*, 557 F.3d at 1362. Further, because Mr. Carter was represented and counsel did not raise the adequacy of these medical opinions in the July 2010 joint motion or before the Board on remand, and because those medical opinions were in the record at the time of the joint motion, Mr. Carter fails to demonstrate error in this regard. *See Hilkert*, 12 Vet.App. at 151.

Mr. Carter's third argument is based on this Court's decision in *Savage*. Mr. Carter contends that the Board should have sought clarification of his private doctor's May 2006 opinion before

---

[6] The Court notes that, although Mr. Carter refers to a November 2011 VA examination, given that there is no such examination in the record and that the Board decision on appeal is from February 2011, it appears that he intended to dispute the November 2007 VA examination.

assigning it less weight than the May 2006 and November 2007 VA examination reports because the assignment of less weight was based on a lack of clarity as to whether the private doctor reviewed Mr. Carter's treatment records. Mr. Carter, however, misunderstands *Savage*.

In *Savage*, the Court explicitly limited VA's duty to seek clarification of private medical reports to situations where "the missing information is relevant, factual, and objective–that is, not a matter of opinion." 24 Vet.App. at 270. Specifically, the Court held that when a private medical report is the *only* evidence on a material issue, and material medical evidence can no longer be obtained as to that issue, yet clarification of a relevant, objective fact would render the private medical report competent for the assignment of weight, the Secretary must attempt to obtain such clarification. *Id*. at 267.

Here, the record contains two VA medical reports that address the precise issue discussed by the private examiner's report, such that, even without the report, there is competent medical evidence answering the question at issue. Additionally, the Board did not reject the private examiner's report; rather, it assigned less weight because the doctor had not explained whether he had reviewed the entire record. Under such circumstances, where there are competent medical records that adequately address Mr. Carter's condition, the Secretary was not required to seek clarification of the private doctor's opinion. Accordingly, the Court concludes that Mr. Carter has not satisfied his burden of demonstrating error on appeal. *See Hilkert*, 12 Vet.App. at 151.

B. Notice and Opportunity to Submit Additional Argument and Evidence

In Mr. Carter's supplemental memorandum, he argues that the Board failed to provide his current representative, Attorney Vanhoose, with sufficient notice and opportunity to submit additional argument or evidence before the Board on remand. He asserts that the Board erroneously mailed the 90-Day Letter to his former representative, Disabled American Veterans, and listed that organization as his current representative on the February 2011 decision. Accordingly, he contends that he was unable to exhaust his administrative remedies prior to appealing this matter to the Court. The Court disagrees.

Attorney Vanhoose has conceded that she was in possession of the 90-Day Letter in December 2010, when she received a copy of Mr. Carter's claims file, at least 67 days before the Board issued its decision in February 2011. *See* Oral Argument at 3:00-6:00; *see also* R. at 3. At oral

14

argument, Attorney Vanhoose stated that she did not *review* the claims file until *after* the February 2011 Board decision had issued. *Id.* The mere fact that Attorney Vanhoose chose not to review Mr. Carter's claims file immediately upon receipt does not demonstrate a lack of notice that Mr. Carter's appeal was returned to the Board for adjudication following the joint motion for remand. In fact, when the joint motion for remand was granted by the Court, Attorney Vanhoose had notice that Mr. Carter's claim was no longer before the Court and had returned to the Board.

The Court has held that notice errors can be cured by demonstrating actual receipt. *Matthews v. Principi*, 19 Vet.App. 23, 29 (2005) (holding that appellant's counsel's receipt of the appellant's claims file in August 1997 that included a copy of the Statement of the Case "was sufficient to cure any potential defect in the Secretary's mailing of the [Statement of the Case] in August 1996 to the appellant's then-representative"); *Clark v. Principi*, 15 Vet.App. 61, 64 (2001) (holding that the Board's "mailing defect was cured by the appellant's actual receipt of a copy of the June 1999 Board decision in January 2000"); *cf. Hauck v. Brown,* 6 Vet.App. 518, 519 (1994) (stating that notice defects are not overcome where there is no evidence of actual receipt). Here, Attorney Vanhoose had actual receipt of the 90-Day Letter when she received Mr. Carter's claims file in December 2010.[7] *See* Oral Argument at 3:00-6:00. She also negotiated for, and was successful in obtaining, a return of the appeal to the Board in the July 2010 joint motion for remand. Thus, Attorney Vanhoose had ample time to take action and contact the Board prior to its February 2011 decision, but chose not to do so.

Although the Board issued its decision less than 90 days after Attorney Vanhoose's receipt of the claims file, she acknowledged that she did not receive the Board decision until December 2011. *See* Appellant's March 27, 2012, Opposition to Motion to Dismiss. Accordingly, Attorney Vanhoose's decision not to submit arguments to the Board cannot be said to have been influenced by issuance of the February 2011 Board decision. Whether by error or omission or a conscious decision not to act, she simply did not do so. During the 12-month period between December 2010 and 2011, Attorney Vanhoose could have raised arguments to the Board and the Board would have

_____

[7]Absent any argument to the contrary, the Court will presume that Mr. Carter also received a copy of the August 2010 90-Day Letter in its normal course. *See Sthele v. Principi*, 19 Vet. App. 11, 16 (2004) (stating that the Court has long "recognized that '[t]here is a presumption of regularity under which it is presumed that government officials "have properly discharged their official duties"'") (quoting *Ashley v. Derwinski*, 2 Vet.App. 307, 308-09 (1992)).

been required to consider them, despite the Board's issuance of its decision during that period. Accordingly, the appellant's counsel of record had notice and an opportunity to participate and submit arguments to the Board before the matter was readjudicated by the Board and could have participated during the more than one-year period before she apparently received notice in December 2011 of the Board's readjudication. Therefore, neither Mr. Carter nor counsel were prevented from presenting additional argument or evidence, but rather opted not to do so.

With regard to the contention that the February 2011 Board decision is void because the Board listed the wrong representative, this argument is not persuasive. The misidentification of Mr. Carter's representative on the cover of the Board decision does not alter the substance of the decision. Rather, the misidentification relates only to when Attorney Vanhoose received notice of the decision, thus, beginning the 120-day period during which a timely appeal could be filed.[8]

Here, Attorney Vanhoose asserted, and the Secretary subsequently conceded, that she did not receive actual notice of the February 2011 Board decision until December 2011. *See* Appellant's March 27, 2012, Opposition to Motion to Dismiss; *see also* Secretary's Motion to Withdraw Motion to Dismiss. Thus, Mr. Carter had 120 days from that date of actual receipt to file his Notice of Appeal. *See Ashley v. Derwinski*, 2 Vet.App. 62, 65-67 (1992)*.* Mr. Carter filed his Notice of Appeal with the Court on January 19, 2012, well within the 120 days. Therefore, the Court found that Mr. Carter's Notice of Appeal was timely. Consequently, the Court cannot conclude that the Board's error–listing Mr. Carter's previous representative on the February 2011 decision–is prejudicial or somehow renders the decision void. *See Sellers v. Shinseki,* 25 Vet.App. 265, 274 (2012) (explaining that the issue of how notice was received by the parties is moot where actual receipt serves to establish finality for purposes of appeal to this Court); *see also Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004).

---

[8] *See* 38 U.S.C. § 7266 (noting that "a person adversely affected by [a decision of the Board] shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to [38 U.S.C.] section 7104(e)," which requires the Board to mail a copy of its decision to the claimant and any authorized representative).

16

C. Summary

The Court now holds that when represented parties enter into a joint motion for remand of an appeal from this Court to the Board, the parties must give clear direction to the Board of the errors that they agree are raised by the record and specify what further action the Board must take with respect to the claim. Further, the degree to which the joint motion for remand relieves the Board of the duties it possesses will be determined by the terms of the joint motion for remand in the context of the other facts present in the case. In this case, because it is clear that Mr. Carter did not surrender the right for a new record review by the Board–indeed he preserved it–the Board was required to address issues reasonably raised by the record and, as such, was required to address issues identified by such review, as well as those matters specified in the joint motion for remand. In determining whether an issue was reasonably raised by the record, the Board also considers the joint motion for remand, which is part of the record. This rule reconciles the various goals behind joint motions for remand, including, most importantly, assisting veterans in obtaining their benefits in the most expeditious manner possible.

In sum, the Court wishes to make clear that the intended effect of this decision is not to discourage joint motions for remand. On the contrary, the Court understands and appreciates their importance. However, the Court cautions against remands merely for the sake of remands. Judicial efficiency is not increased when counsel enters into a joint motion for remand before reviewing a client's claims file or record and fails to provide guidance to the Board concerning its responsibilities on remand. Remands of such ilk cause unnecessary delay, waste scarce resources, and are harmful to the entire system, including to the Court, VA, and, most importantly, the veteran.

## IV. CONCLUSION

Upon consideration of the foregoing, the February 18, 2011, Board decision is AFFIRMED.

KASOLD, *Chief Judge*, concurring in part and dissenting in part: I fully concur in the Court's (1) holding today that the terms of a joint motion for remand (JMR) are for consideration when determining what issues might reasonably be raised by the record, as well as the Court's application

of that holding, and (2) application of *Savage v. Shinseki*, 24 Vet.App. 259 (2011), to the facts in this case.

I cannot agree, however, with the majority's view of professional responsibility with regard to managing a case. Succinctly stated, the Secretary confirmed at oral argument that, with regard to claims remanded by the Court, it is his practice to send claimants and counsel a letter informing them that they have 90 days to submit additional evidence before the Board will render its decision. Given this practice, I believe it is well within the parameters of competent representation and proper case management that an attorney practicing before this Court and aware of the Secretary's practice might wait for the Secretary's 90-day letter before reviewing a claims file after a matter has been remanded to the Board and before finalizing the evidence and argument counsel might wish to present.

In finding otherwise, the majority essentially requires counsel to examine a claims file for such a letter, just in case the letter was sent to the wrong counsel, as was the case here. There certainly is lore about VA errors, but I do not believe even that rises to the level of requiring an appellant's counsel to search for a misdirected 90-day letter that counsel is not aware has been issued.

Rather, the Secretary erred in this case when he sent a 90-day letter to the wrong representative, and that error was the cause of Mr. Carter's counsel not being provided the properly anticipated notice prior to issuance of the Board decision now on appeal – notice that indisputably is the practice of the Secretary. The lack of notice, in turn, is why Mr. Carter's counsel did not present additional argument below. Indeed, had counsel for Mr. Carter been provided the 90-day notice, she could have raised the two issues that are raised in this appeal but – in the context of the parties' JMR without subsequent argument presented below – not reasonably raised by the record. The 90-day notice letter also would have permitted counsel to timely focus on Mr. Carter's claim and secure a medical opinion within the 90-day notice period, which practice, incidentally, would provide a more current opinion than one obtained immediately after a Court remand and well before issuance of the 90-day letter provided by the Secretary.[9]

---

[9] The majority also places emphasis on the fact that Mr. Carter's counsel did not review the claims file for more than 12 months after receiving it, but such emphasis is a red herring. Either the Secretary has a practice of providing a 90-day notice letter or he does not. Either counsel can rely on that or they cannot.

As to the majority's reliance on *Matthews v. Principi*, 19 Vet.App. 23, 29 (2005), it is misplaced. Yes, *Matthews* held that actual receipt of a notice in a claims file may cure a potential notice defect in the original mailing of that notice, and rejected an argument that an appellant's counsel should not be required to search the contents of the claims file in order to preserve a veteran's rights to appeal. *Id.* But, *Matthews* involved a claims file that was forwarded to a newly retained counsel who knew a Statement of the Case (SOC) had been issued before he requested and received the claims file, such that the reasonably prudent counsel would know that the SOC should be contained in the claims file. In those limited circumstances, receipt of the claims file cured any defective mailing of the SOC to the previous representative. *Id.* at 25, 29. *Matthews* did not involve a counsel who secured a remand to the Board, the Secretary's practice of providing a 90-day letter before a Board decision is rendered, and no knowledge on the part of counsel that a 90-day letter had been issued.

In sum, Mr. Carter was denied fair process and a meaningful opportunity to participate in his claim, and this matter should be remanded to now provide that process and opportunity. *See Haney v. Nicholson*, 20 Vet.App. 301, 305 (2006) (Secretary "is required to provide fair process in the adjudication of claims" (citing *Austin v. Brown*, 6 Vet.App. 547 (1994))); *Thurber v. Brown*, 5 Vet.App. 119, 122-26 (1993) (noting general principles of fair process and stating that "VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process"); *see also Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred."); *Arneson v. Shinseki*, 24 Vet.App. 379, 389 (2011) (finding prejudice when error "could have altered" the Board's determinations); *Overton v. Nicholson*, 20 Vet.App. 427, 435, 444 (2006) (any error depriving a claimant of "a meaningful opportunity to participate effectively in the processing of his or her claim . . . must be considered prejudicial" and remanding where claimant was not able to meaningfully participate in the adjudication of his claim).