# United States Court of Appeals for the Federal Circuit

---

**ROBERT L. STINSON,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-1090

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 20-8342, Judge Joseph L. Toth.

---

Decided: February 15, 2024

---

THOMAS E.F. STRONG, Veterans Legal Advocacy Group, Arlington, VA, argued for claimant-appellant. Also represented by HAROLD HAMILTON HOFFMAN, III.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ASHLEY AKERS, BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, REYNA, and STARK, *Circuit Judges.*

REYNA, *Circuit Judge.*

This is an appeal from the U.S. Court of Appeals for Veterans Claims, affirming the Board of Veterans' Appeals' denial of Mr. Robert Stinson's request for service connection for his blastic plasmacytoid dendritic cell neoplasm. Because the Veterans Court impermissibly found facts in the first instance when reviewing the Board's decision, we vacate and remand.

## BACKGROUND

Mr. Stinson served in the U.S. Army from 1963 to 1966. J.A. 2. In 1964, he deployed to Germany and while there, the Army treated Mr. Stinson for various conditions, which the parties interchangeably refer to as his "in-service symptoms" or "in-service conditions." J.A. 917; J.A. 921–22; J.A. 931. These in-service symptoms began in January 1964, when Mr. Stinson was seen for a rash on his "posterior cervical area," also known as the back of the neck. J.A. 921. In May 1964, Mr. Stinson experienced early dermatophytosis, known as ringworm. J.A. 922. Mr. Stinson was also treated twice for nausea. J.A. 921. Finally, in August 1966, Mr. Stinson was seen for recurrent nosebleeds, including an irritated lesion in the left turbinates, which are membrane-covered bony or cartilaginous plates on the walls of the nasal chambers. J.A. 917; J.A. 931; Appellee Br. 2.

In the early 2000s, Mr. Stinson was diagnosed with prostate cancer. J.A. 113. Around this time, Mr. Stinson's physicians also noted "mild leukocytopenia" (low white blood cell count) and "mild thrombocytopenia" (low level of platelets), collectively, Mr. Stinson's "2002 symptoms." J.A. 615.

In 2012, Mr. Stinson was diagnosed with blastic plasmacytoid dendritic cell neoplasm ("BPDCN"), a rare and aggressive form of cancer that can start in the skin, infiltrate bone marrow, and progress into acute myelogenous leukemia ("AML"). J.A. 109; J.A. 114; J.A. 124; J.A. 580; J.A. 615. The location of the lesion which gave rise to Mr. Stinson's BPDCN diagnosis is not clear from the record. Some medical documentation states it was on Mr. Stinson's "back shoulder" while other medical documents list it on his "upper back." *See* J.A. 117; J.A. 119; J.A. 589; J.A. 590; J.A. 806.

In 2012, Mr. Stinson sought service connection for his BPDCN from the U.S. Department of Veterans Affairs ("VA") based on alleged exposure to carcinogens during his service in Germany in the 1960s. J.A. 2. To support his claim, in 2016, Mr. Stinson provided the VA with a letter from a private oncology nurse practitioner. J.A. 573. The letter stated that "[t]hough we cannot confirm the link between Mr. Stinson's cancer and past exposures to carcinogens, it is possible." J.A. 573. The letter also stated that "[l]ymphomas and leukemias often occur after age 60, possibly from an exposure 30-40 years prior," and that "[t]he majority of cancers are thought to occur due to environmental exposures over time." J.A. 573. The letter did not discuss Mr. Stinson's in-service symptoms, his 2002 symptoms, or the location of the lesion giving rise to his BPDCN diagnosis. J.A. 573.

In 2018, the Board of Veterans' Appeals ("Board") issued a decision on Mr. Stinson's claim for service connection. J.A. 143. The Board noted that a remand was necessary for Mr. Stinson to obtain a VA medical examination and a medical opinion on the issue of whether his BPDCN "was incurred in or caused by a disease, injury, or event in service." J.A. 143. In 2019, following an examination of Mr. Stinson, a VA examiner provided a medical opinion ("2019 VA medical opinion"), which concluded that Mr. Stinson's BPDCN was "less likely than not" caused by

Mr. Stinson's service in Germany. J.A. 109; J.A. 111. The VA examiner summarily noted in her opinion that "[t]here is no evidence found in the record that this [sic] issues started prior to 2011."[1]  J.A. 111.  The VA examiner also reasoned that "[b]ased on the survival rate at 14 months and the aggressiveness of [BPDCN], it would be highly improbable that this started in the 1960's."[2]  J.A. 109; J.A. 111.  The 2019 VA medical opinion did not explicitly discuss Mr. Stinson's in-service symptoms, his 2002 symptoms, or the location of the lesion giving rise to Mr. Stinson's BPDCN diagnosis.  J.A. 109–11.

In 2020, the Board denied Mr. Stinson's claim for service connection for BPDCN.  J.A. 17.  The Board determined that the preponderance of the evidence was against finding that Mr. Stinson's BPDCN "began during active

---

[1]    Although it is not clear from the VA examiner's opinion what issues she is referring to when she states "this [sic] issues," we read this to mean Mr. Stinson's BPDCN.  Also, it is not readily apparent why the VA examiner concluded that the year 2011 is the earliest possible date of BPDCN manifestation.  *See* J.A. 109–11.  She noted earlier in her opinion that Mr. Stinson was diagnosed with BPDCN in July 2012.  J.A. 109.

[2]    While not at issue in this appeal, it is worth noting the VA examiner's conclusion that Mr. Stinson's BPDCN likely did not start in the 1960s rests largely on her point that the median overall survival rate of BPDCN is 14 months.  Interestingly, however, at the time the VA examiner issued her opinion in 2019, Mr. Stinson had already been living with BPDCN for almost seven years.  Additionally, Mr. Stinson's counsel noted at oral argument that Mr. Stinson was still with us as of the date of oral argument, almost twelve years after his initial BPDCN diagnosis, far surpassing the median overall survival rate for this disease.  *See* Oral Arg. 11:29–11:42.

service, or [was] otherwise related to an in-service injury, event, or disease." J.A. 15. Notably, the Board, like the 2019 VA medical opinion and the 2016 nurse practitioner letter, did not explicitly address Mr. Stinson's in-service symptoms, his 2002 symptoms, or the location of the lesion giving rise to Mr. Stinson's BPDCN diagnosis. *See* J.A. 13–17; J.A. 109; J.A. 573.

Mr. Stinson appealed the Board's decision to the U.S. Court of Appeals for Veterans Claims ("Veterans Court"), which affirmed the Board's denial of Mr. Stinson's claim for service connection for BPDCN. J.A. 1; J.A. 6. Mr. Stinson argued that the Board should have sought clarification from Mr. Stinson's nurse practitioner concerning her 2016 letter. J.A. 3.

Mr. Stinson also raised a new argument on appeal before the Veterans Court. According to Mr. Stinson, the 2019 VA medical opinion, as well as the Board's decision, were inadequate because both failed to address his full medical history prior to his 2012 BPDCN diagnosis, specifically his in-service symptoms and his 2002 symptoms. J.A. 4–5; J.A. 40–42. According to Mr. Stinson, his in-service symptoms, such as his January 1964 rash, were in the same place as the lesion discovered to be BPDCN. J.A. 41. Mr. Stinson also noted that his 2002 symptoms, i.e., his low white blood cell count and low platelet count, pre-dated his BPDCN. J.A. 40. Thus, according to Mr. Stinson, both the in-service symptoms and his 2002 symptoms were "especially relevant" and cut against the 2019 VA medical opinion's conclusion that "there is no evidence found in the record that [Mr. Stinson's] issues started prior to 2011." J.A. 40.

The Veterans Court rejected Mr. Stinson's argument concerning clarification of the nurse practitioner letter from 2016, finding no basis for clarification under *Carter v. Shinseki*, 26 Vet. App. 534, 545 (2014) and *Savage v. Shinseki*, 24 Vet. App. 259, 270 (2011). J.A. 3. The

Veterans Court then considered Mr. Stinson's newly raised argument but ultimately disagreed with it. J.A. 4–5. The Veterans Court affirmed the Board's denial of Mr. Stinson's claim for service connection for BPDCN. J.A. 6.

Mr. Stinson now appeals, arguing that the Veterans Court exceeded its statutory authority when it improperly found facts in the first instance concerning Mr. Stinson's BPDCN lesion and in-service symptoms. Appellant Br. 13–16. Mr. Stinson separately argues that *Carter v. Shinseki*, 26 Vet. App. 534 (2014) improperly narrows the VA's statutory duty to reasonably assist veterans in proving their cases. Appellant Br. 19–22. We have jurisdiction pursuant to 38 U.S.C. § 7292(c).

DISCUSSION

I

We have limited appellate jurisdiction over appeals from the Veterans Court. *Sullivan v. McDonald*, 815 F.3d 786, 788–89 (Fed. Cir. 2016). This court may review legal questions, including the validity of any statute or regulation or any interpretation thereof. 38 U.S.C. § 7292(c). This court may not, however, review factual determinations or application of law to fact, except to the extent an appeal presents a constitutional issue. *Id.* § 7292(d)(2).

Whether the Veterans Court exceeded its jurisdiction is a question of law that this court reviews de novo. *Sullivan*, 815 F.3d at 788–89; *Bonner v. Nicholson,* 497 F.3d 1323, 1326–27 (Fed. Cir. 2007). "This court routinely exercises jurisdiction to consider whether the Veterans Court exceeded its jurisdiction in making de novo fact-finding." *Tadlock v. McDonough*, 5 F.4th 1327, 1332–33 (Fed. Cir. 2021) (collecting cases).

II

Mr. Stinson argues that the Veterans Court exceeded its statutory authority when it found facts in the first

instance concerning (1) the location of the lesion giving rise to his BPDCN diagnosis and (2) his in-service symptoms. Appellant Br. 14–16. We agree with Mr. Stinson's position, and for this reason, vacate and remand.[3]

The Veterans Court has no statutory authority to make factual findings in the first instance. 38 U.S.C. § 7261(c); *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013). The Veterans Court also has no statutory authority to weigh the evidence in the first instance. *Tadlock*, 5 F.4th at 1334; *Deloach*, 704 F.3d at 1380. As we explained in *Tadlock*,

> [w]hen questions of fact are *open to debate*, veterans are entitled to present whatever evidence and arguments they have to the agency charged with administering veterans' benefits and possessed with the expertise to render informed judgments and to have that evidence and those arguments considered by that agency in the first instance.

*Tadlock*, 5 F.4th at 1337 (emphasis added). Whether an injury is service connected is a question of fact delegated to the VA for consideration in the first instance. 38 U.S.C.

---

[3] We need not reach Mr. Stinson's argument concerning *Carter* because the Veterans Court also relied on *Savage* to reject Mr. Stinson's contention regarding the VA's duty to seek clarification. J.A. 3. Mr. Stinson does not challenge the application of *Savage* or request us to overturn *Savage* in his briefing. In fact, Mr. Stinson relied on *Savage* in his argument before the Veterans Court. J.A. 33–36. We see no error with respect to the Veterans Court's disposition regarding the nurse practitioner's letter.

§§ 5100–5109(b); 38 C.F.R. § 3.303(a); *Stevens v. Shinseki,* 428 F. App'x 979, 980 (Fed. Cir. 2011).

Before the Veterans Court, Mr. Stinson argued that the Board's analysis and the 2019 VA medical opinion were inadequate because they failed to consider his full medical history prior to his BPDCN diagnosis, including his in-service symptoms and his 2002 symptoms. J.A. 4–5. According to Mr. Stinson, his in-service symptoms and 2002 symptoms were relevant to his BPDCN lesion and thus should have been considered by the Board and the VA medical examiner. J.A. 40–41. Mr. Stinson noted that they were relevant because (1) his 2002 symptoms preceded his BPDCN diagnosis and (2) his in-service January 1964 rash was in the same place as the lesion that gave rise to his BPDCN diagnosis. J.A. 40–41. Mr. Stinson argued that these symptoms show that his BPDCN, a rare form of cancer that affects a patient's blood and skin, preceded 2011, which is contrary to the 2019 VA medical opinion's conclusion that there was no evidence of BPDCN prior to 2011. J.A. 40–41. The Veterans Court rejected this argument, explaining that Mr. Stinson failed to show that his in-service symptoms and 2002 symptoms were relevant to his BPDCN diagnosis. J.A. 4–5. The Veterans Court's conclusion, however, with respect to the January 1964 rash, rests upon impermissible factual determinations that require vacatur and remand.

We agree with Mr. Stinson that the Veterans Court impermissibly found as a matter of fact, and in the first instance, that Mr. Stinson's January 1964 rash was in a different location than his BPDCN lesion and thus irrelevant to Mr. Stinson's claim for service connection for BPDCN. According to the Veterans Court, "[t]he record does not support [Mr. Stinson's] contention" that his "in-service skin lesion was in the same place as the lesion later discovered to be BPDCN." J.A. 5. The Veterans Court noted that Mr. Stinson's January 1964 rash was located on

his "posterior cervical area," i.e., Mr. Stinson's neck.[4] J.A. 5. The Veterans Court then noted that this condition was not identified on Mr. Stinson's "shoulder, which is where the BPDCN began." J.A. 5. The Veterans Court later noted that Mr. Stinson "states (incorrectly) that the skin lesion occurred in the same place as his BPDCN lesion." J.A. 5. The Veterans Court concluded that Mr. Stinson "provides no medical evidence or argument that his [service treatment records] are relevant evidence of carcinogen exposure in service." J.A. 5.

However, the record is unclear as to whether the lesion that gave rise to Mr. Stinson's BPDCN diagnosis was located on his shoulder or his upper back. For example, Mr. Stinson's oncologist stated the BPDCN lesion first began on his "upper back." J.A. 806. And, as Mr. Stinson notes, a lesion located on his upper back may have overlapped with the back of his neck, the location of his January 1964 rash. Appellant Br. 17–18; J.A. 931. Thus, because the location of the lesion giving rise to Mr. Stinson's BPDCN diagnosis is open to debate, it was impermissible for the Veterans Court to conclude in the first instance that it was located on Mr. Stinson's shoulder and thus not located in the same location as Mr. Stinson's January 1964 rash. By doing so, the Veterans Court exceeded its statutory authority by engaging in de novo fact-finding. *Tadlock*, 5 F.4th at 1337–38.

We also determine that the Veterans Court exceeded its statutory authority when it improperly weighed evidence in the first instance. J.A. 5. "The Court of Appeals

---

[4] The Veterans Court referred to the posterior cervical area rash as a June 1964 rash. J.A. 5. We read this as a typographical error since Mr. Stinson's service treatment records reflect a January 1964 date, *see* J.A. 921, and both parties on appeal refer to this rash as occurring in January 1964. Appellant Br. 17; Appellee Br. 2.

for Veterans Claims, [even] as part of its clear error review, must *review* the Board's weighing of the evidence; it may not weigh any evidence itself." *Tadlock*, 5 F.4th at 1334 (quoting *Deloach*, 704 F.3d at 1380) (alteration in original). Here, no medical expert nor the Board explicitly addressed whether Mr. Stinson's in-service symptoms were relevant to Mr. Stinson's BPDCN diagnosis such that they evinced an earlier BPDCN start date than 2011. Before the Veterans Court, Mr. Stinson argued for the first time on appeal that there was a connection between his in-service symptoms and his BPDCN diagnosis. J.A. 5. The Veterans Court recognized this argument, stating that Mr. Stinson "states (incorrectly) that the skin lesion occurred in the same place as his BPDCN lesion and that the leukopenia and thrombocytopenia [2002 symptoms] preceded the BPDCN." J.A. 5. The Veterans Court then concluded that the location of Mr. Stinson's in-service symptoms and the date of onset of his 2002 symptoms provided "little support" for Mr. Stinson's theory of service connection for BPDCN. J.A. 5. This determination, with respect to the in-service symptoms, was error.[5]

---

[5]    In his opening brief filed before this court, Mr. Stinson did not argue that the Veterans Court engaged in fact-finding or weighing of evidence with respect to the 2002 symptoms. *See* Appellant Br. 14–18 (arguing impermissible factfinding regarding the locations of his January 1964 rash and BPDCN lesion, the locations of his 1966 lesion and cancerous lesion, and relevancy of his nosebleeds to his carcinogenic exposure). At oral argument, Mr. Stinson argued during his opening and rebuttal that the 2002 symptoms of a cystic mass, prostate cancer, leukopenia, and thromboctyopenia are relevant to linking his BPDCN to his in-service symptoms. Oral Arg. 2:29–2:43, 3:14–3:41, 10:40–11:00, 26:57–28:38. This argument, however, is not present in his opening brief and is therefore forfeited.

Here, Mr. Stinson's in-service symptoms, such as his January 1964 rash, affected certain portions of Mr. Stinson's skin. Whether these symptoms, and the timing of these symptoms, are connected to Mr. Stinson's BPDCN, a very rare form of cancer that can manifest in the skin and can spread to the blood, is a factual question for the medical experts, whose opinions are then weighed by the Board. *See Tadlock*, 5 F.4th at 1334; *see also Deloach*, 704 F.3d at 1380. The Veterans Court, in turn, reviews the Board's weighing of this evidence. *Tadlock*, 5 F.4th at 1334. The Veterans Court has no statutory authority to weigh Mr. Stinson's evidence in the first instance. *See id.* It is especially problematic that the Veterans Court reached this conclusion based on its own factfinding. Again, no medical expert, nor the Board, explicitly discussed whether Mr. Stinson's in-service symptoms are evidence of an earlier BPDCN start date than 2011.

The government argues that the Veterans Court was within its statutory authority to assess whether the record supported Mr. Stinson's newly raised argument concerning the relevancy of his in-service symptoms in relation to his BPDCN diagnosis. Appellee Br. 5. We recognize that Mr. Stinson raised for the first time on appeal to the Veterans Court that his in-service symptoms evinced a possible manifestation of his BPDCN prior to 2011. When presented with a new issue on appeal, the Veterans Court can exercise sound discretion to reject the newly raised argument under the doctrine of issue exhaustion. *Maggitt v. West*, 202 F.3d 1370, 1377–78 (Fed. Cir. 2000). The Veterans Court may also entertain the new argument. *Id.* at 1377. And it may appropriately assess whether the record contains sufficient evidence, as a matter of law, to support a

*Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1382 (Fed. Cir. 2017) (finding argument "is too late" when not raised until the reply brief and oral argument).

particular argument. Finally, the Veterans Court may consider whether in light of this new argument, the Board's error, if any, was prejudicial. 38 U.S.C § 7261(b)(2).[6] What the Veterans Court cannot do, however, is find facts or weigh evidence in the first instance when entertaining a newly raised issue, as it did in this case. *Tadlock*, 5 F.4th at 1337–38.

When the Veterans Court acts as a fact finder, the Veterans Court exceeds its statutory authority and frustrates one of the reasons for which it entertains newly raised issues on appeal—to provide the veteran with a "user friendly" claims process. *Maggitt*, 202 F.3d at 1378. As we explained in *Maggitt*, the Veterans Court may want to consider a newly raised issue on appeal, as opposed to dismissing it outright, because veterans often face challenges when presenting their case before the VA or before the Board, such as not obtaining independent counsel until after the Board reaches its final decision. *Id.*[7] However, if in reviewing a newly raised issue, the Veterans Court finds facts in the first instance, the Veterans Court deprives the veteran of the "user friendly" system Congress intended. *Id.* Specifically, the Veterans Court denies the veteran of the opportunity to present evidence before the trier of fact that has the expertise and responsibility of determining such factual issues. The Veterans Court also denies the veteran of any effective appellate review of such factual issues. Thus, in considering a new argument on appeal, the Veterans Court should appropriately review the record and

---

[6]    The Veterans Court did not conduct a prejudicial error analysis in this case. J.A. 1–6; *see also* Oral Arg. 00:45–3:34; 5:55–7:31; 18:49–20:18.

[7]    Appellant's counsel noted at oral argument that Mr. Stinson was not represented by legal counsel before the VA or the Board and was ill at that time. *See* Oral Arg. 3:44–4:20.

remand to the appropriate body any factual questions open to debate.  38 U.S.C § 7252(a).

The government argues that any error by the Veterans Court was harmless.  *See* Oral Arg. 18:11–18:47.  We reject this argument as speculative.  Moreover, this inquiry falls outside of our appellate jurisdiction.  To find harmless error in this instance would require a factual determination or an application of a law to the facts, which we cannot do. 38 U.S.C. § 7292(d)(2); *cf. Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005) (determining that the Veterans Court's interpretation of a case, a question of law, was harmless error).

## CONCLUSION

For the reasons discussed above, the Veterans Court exceeded its statutory authority when it found facts and weighed evidence in the first instance.  We thus vacate the decision of the Veterans Court and remand the case.  On remand, the Veterans Court is instructed to remand the case to the Board for further factual development consistent with this opinion, including whether Mr. Stinson's in-service symptoms support a manifestation of BPDCN earlier than 2011.

**VACATED AND REMANDED**

### COSTS

Costs for Mr. Stinson.