# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-3900

ROBERT D. WATTS, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided September 15, 2025)

*Benjamin R. Binder*, of Tampa, Florida, was on the brief for the appellant.

*Richard J. Hipolit*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Megan C. Kral*, Deputy Chief Counsel; and *Sarah M. Ensenat*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, MEREDITH, and TOTH, *Judges*.

MEREDITH, *Judge*: The appellant, Robert D. Watts, through counsel appeals a March 3, 2023, Board of Veterans' Appeals (Board) decision that found no clear and unmistakable error (CUE) in a February 2006 Statement of the Case (SOC)[1] denying entitlement to benefits for post-traumatic stress disorder (PTSD). Record (R.) at 4-14. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). In October 2024, this matter was referred to a panel to consider whether an SOC, when it includes a review determination by a decision review officer (DRO)—a document that the Court will refer to as a "DRO-SOC"—may constitute a final decision that may be collaterally attacked on the basis of CUE. For the following reasons, the Court holds that it may.[2] Further, the Court concludes that

---

[1] In the legacy appeals system, if a "claimant . . . files a [N]otice of [D]isagreement [(NOD)] with the decision of the agency of original jurisdiction [(AOJ)], such agency will take such development or review action as it deems proper," and "[i]f such action does not resolve the disagreement . . . , such agency shall prepare [an SOC]." 38 U.S.C. § 7105(d)(1) (2000 & Supp. III 2004, Supp. V 2006); *see Ferko v. McDonough*, 37 Vet.App. 262, 264 n.3 (2024) (en banc) (explaining that the legacy appeals system refers to "the 'legacy' adjudicatory system in place before VA's implementation of the Veterans Appeals Improvement and Modernization Act of 2017 ('AMA'), which established the 'modernized' system and went into effect on February 19, 2019.").

[2] It is undisputed that the document at issue here was prepared by a DRO after undertaking the review process outlined in 38 C.F.R. § 3.2600, which is "an additional, optional procedure to be conducted, if at all, between a claimant's filing a[n NOD] and VA's issuance of a[n SOC]." Review of Benefit Claims Decisions, 66 Fed. Reg. 21,871, 21,871 (May 2, 2001) (final rule). Accordingly, the Court does not decide whether a traditional SOC issued pursuant

the February 2006 DRO-SOC at issue in this case is a final decision for the purposes of CUE, and the appellant has not demonstrated that the Board's decision to deny his motion to revise that DRO-SOC on the basis of CUE is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or unsupported by adequate reasons or bases. 38 U.S.C. § 7261(a)(3)(A); *see* 38 U.S.C. § 7104(d); *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996). Accordingly, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Navy from August 1962 to January 1965. R. at 2199. Postservice VA medical records reflect that, in 2003, clinicians assessed him with an adjustment disorder and anxiety disorder, R. at 1955, and with "[p]robable PTSD secondary to incarceration," R. at 1953. In March 2004, a VA regional office (RO) denied his claim for benefits for PTSD, finding that "[t]he evidence of record does not provide credible evidence that the claimed stressor occurred" and was "insufficient to confirm a link between [his] current symptoms and an in-service stressor." R. at 2068. The appellant filed an NOD with that decision, R. at 2054, and later opted for review by a DRO, *see* Secretary's Oct. 3, 2024, Supplemental (Supp.) Memorandum (Memo.), Appendix. In support of his appeal, he submitted a January 2005 medical opinion from a VA psychologist, who explained that she had been treating the appellant for symptoms of PTSD and noted the appellant's reports of handling dead bodies during service, fearing for his life if he were to be sent to Vietnam, and learning that friends had been killed. R. at 2003-04.

The RO provided an SOC, completed by a DRO, in February 2006, continuing to deny the appellant's PTSD claim. R. at 1933-44. The DRO-SOC reflects that the evidence considered included the appellant's service medical records, VA treatment records, and lay statements. R. at 1933. Of note, and related to the arguments on appeal, the DRO acknowledged the January 2005 report in which the VA psychologist "discusse[d] the stressors [the appellant] identified as related to active duty, but d[id] not mention any of [the appellant's] stressors from [his] period of

---

to section 7105(d), rather than in connection with DRO review, may be a final decision subject to collateral attack. *See Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337-38 (Fed. Cir. 2007) (explaining that, under the doctrine prohibiting advisory opinions, "federal courts are to decide only 'actual controversies by judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in the case before it'" (quoting *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union v. Missouri*, 361 U.S. 363, 367 (1960))); *Norvell v. Peake*, 22 Vet.App. 194, 200 (2008).

incarceration." R. at 1943. The DRO also found "some inconsistencies" in the VA psychologist's report. *Id.* The DRO then concluded as follows:

> [T]he weight of the evidence is not in equipoise, but rather weighs against a favorable determination[,] as it is insufficient to substantiate the stressful events [the appellant] described. The available evidence is insufficient to confirm that the stressors, as [he] described them, occurred. Records from the service department failed to corroborate the claimed stressors. The available medical evidence is insufficient to confirm a link between current symptoms and an in-service stressor.

*Id.*

In January 2013, after additional development and adjudication not pertinent to the matter on appeal,[3] the appellant asserted, through a veterans service organization, that there was CUE in the February 2006 DRO-SOC insofar as the DRO continued to deny entitlement to benefits for PTSD. R. at 1402-05. Specifically, he argued that the DRO's conclusion that the medical evidence did not support a link between his current symptoms and an in-service stressor was "not supported by the record." R. at 1402. As support, he pointed to 2004 and 2005 records from his treating psychiatrist. R. at 1402-05. He further asserted that he had "a diagnosis of PTSD and his stressors were consistent with his [military occupational specialty] of hospital corpsman." R. at 1405.

The RO, in February 2021,[4] found no CUE in the February 2006 DRO-SOC. R. at 111-13. The appellant appealed to the Board, R. at 99-100, and in a September 2021 decision, the Board dismissed the appellant's motion to revise the February 2006 DRO-SOC based on CUE, finding that an SOC is not a prior final decision subject to collateral attack, R. at 68-70. The Board explained that an SOC "is merely a 'summary of law and evidence' concerning [the] claim." R. at 70 (quoting R. at 1931). On appeal, the parties entered into, and the Clerk of the Court (Clerk) granted, a joint motion for remand (JMR) in which they agreed that "the Board erred in holding that the February 2006 [DRO-]SOC was not a final determination that is subject to revision based on CUE, but rather was 'merely a summary of law and evidence' concerning [the] claim." R. at 56

---

[3] Of note, the RO granted benefits for an anxiety disorder in April 2011 but continued to decline to reopen the appellant's PTSD claim, finding that the evidence submitted was not new and material. R. at 1515-18. The RO increased the appellant's disability rating for anxiety to 100%, effective February 9, 2013. R. at 1308-09. Ultimately, the Board reopened the appellant's claim for benefits for PTSD in August 2017 and granted benefits for that condition, combining it with anxiety disorder and assigning a 100% rating for the entire period on appeal. R. at 930-43. The RO implemented the Board's decision in September 2017 and assigned an effective date of March 18, 2010, for the award of the total rating. R. at 928.

[4] VA issued this decision after the appellant filed a petition with the Court asserting that VA had failed to act on his 2013 CUE motion. *See Watts v. McDonough*, No. 21-0529, 2021 WL 924872 (Vet. App. Mar. 11, 2021) (order).

3

(quoting R. at 70). More particularly, the parties agreed that "[t]he February 2006 [DRO-]SOC was issued as part of the [DRO] process, and was signed by a DRO," that the DRO-SOC "was not appealed," and that "the DRO decision was the last final decision on the claim." R. at 56-57. Of note, the parties included two quotes from *Prickett v. Nicholson* (*Prickett I*), 20 Vet.App. 370, 377 (2006), *aff'd sub nom. Prickett v. Mansfield* (*Prickett II*), 257 F. App'x 288, 293 (Fed. Cir. 2007)—specifically, "'as long as determinations are made in compliance with VA due process and notification requirements that are required for initial rating decisions, we see no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC,'" R. at 57 (quoting *Prickett I*, 20 Vet.App. at 377), and "'VA could properly issue its decision within an SOC without preparing a separate document,'" *id.* (quoting *Prickett II*, 257 F. App'x at 293). The parties then summed up their agreement: "Because the February 2006 SOC was a DRO decision, which, when not appealed, became the last final decision in the claim stream . . . [it] is subject to revision based on CUE." R. at 58. Accordingly, the parties directed the Board to "consider the CUE allegations on the merits." *Id.* Finally, the JMR reflects that the appellant "note[d] that any statements made [in the JMR] shall not be construed as a waiver as to any rights or VA duties . . . as to the matter being remanded, except the parties' right to appeal the Court's order implementing the joint motion." R. at 59.

Once the matter returned to the Board, the appellant submitted argument, reiterating that "the February 2006 SOC was a DRO decision, which, when not appealed, became the last final decision in the claim stream . . . [and] is subject to revision based on CUE." R. at 17. The Board issued the decision on appeal in March 2023, (1) explaining that it was bound by the parties' agreement in the JMR that the February 2006 DRO-SOC is the last final denial of the appellant's PTSD claim and is subject to revision based on CUE and (2) denying the appellant's CUE challenge as to that DRO-SOC. R. at 4-14. This appeal followed.

## II. ANALYSIS

The parties in their initial briefing disputed whether the Board erred in finding no CUE in the February 2006 DRO-SOC. After the Court ordered supplemental briefing, the appellant argued instead that the DRO-SOC here was not a final decision subject to collateral attack because VA inappropriately issued both the DRO's decision and an SOC in a single document. As explained below, this case thus requires the panel to consider whether a DRO-SOC is a decision that may be

4

attacked for CUE, whether the appellant may argue for the first time on appeal that any such decision did not become final, and whether the Board erred in denying the appellant's CUE motion.

## A. Legal Landscape

### 1. Traditional Appeals Process

At the time of the underlying March 2004 RO decision and the February 2006 DRO-SOC, section 7105 provided that "[a]ppellate review will be initiated by a[n NOD] and completed by a [S]ubstantive [A]ppeal after a[n SOC] is furnished." 38 U.S.C. § 7105(a) (2000 & Supp. III 2004, Supp. V 2006). In what the Secretary refers to as the "traditional" appellate process, once an NOD is filed, VA "will take such development or review action as it deems proper . . . [, and i]f such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the [NOD], [VA] shall prepare a[n SOC]." 38 U.S.C. § 7105(d)(1) (2000 & Supp. III 2004, Supp. V 2006); *see* 38 C.F.R. § 19.26 (2005). By statute, an SOC must include "[a] summary of the evidence in the case pertinent to the issue . . . with which disagreement has been expressed," "[a] citation to pertinent laws and regulations and a discussion of how [they] affect the agency's decision," and "[t]he decision on each issue and a summary of the reasons for such decision." 38 U.S.C. § 7105(d)(1)(A)-(C) (2000 & Supp. III 2004, Supp. V 2006); *see* 38 C.F.R. § 19.29 (2005). A claimant has 60 days from the date the SOC is mailed to file his or her Substantive Appeal, and "[t]he [AOJ] may close the case for failure to respond after receipt of the [SOC]." 38 U.S.C. § 7105(d)(3) (2000 & Supp. III 2004, Supp. V 2006).

### 2. DRO Process

In June 2001, VA instituted the DRO process, "a new de novo review procedure . . . available to any claimant who files a[n NOD] with a decision on a claim governed by 38 C.F.R. part 3." 66 Fed. Reg. at 21,871. The Federal Register reflects that the Secretary did not "intend the [DRO process] to change the procedures or rights involved with appealing such claims decisions to the Board." *Id.* Rather, as noted briefly above, the Secretary created the DRO process as "an additional, optional procedure to be conducted, if at all, between a claimant's filing a[n NOD] and VA's issuance of a[n SOC]." *Id.* The Secretary explained that "a claimant may not pursue de novo review [by a DRO] and the traditional appeal simultaneously," and "[a] traditional appeal is suspended until de novo review is complete." *Id.*; *see Monk v. Wilkie*, 30 Vet.App. 167, 173 (2018) (en banc order) (explaining that a claimant must "choose between two nonexclusive appeals processes" after filing an NOD), *aff'd*, 978 F.3d 1273 (Fed. Cir. 2020).

5

The DRO process, which "applies only to legacy claims," appears at 38 C.F.R. § 3.2600[5] and may be summarized as follows: DRO[6] review may be taken of a decision that has not yet become final, and the review will be de novo. 38 C.F.R. § 3.2600(a). If the claimant does not elect the DRO process in the NOD, VA must notify the claimant of this option. 38 C.F.R. § 3.2600(b). The claimant has 60 days to respond; if he or she does not elect the DRO process within 60 days, the claim proceeds under the "traditional appellate process," and VA will issue an SOC. *Id.* Once a claimant selects DRO review, the DRO determines what, if any, additional development is necessary; such development "may include an attempt to obtain additional evidence or the holding of an informal conference with the claimant."[7] 38 C.F.R. § 3.2600(c). The DRO may grant the benefit sought in the NOD but may not revise the underlying decision in a way that is less favorable to the claimant, except based on CUE. 38 C.F.R. § 3.2600(d); *see* 38 C.F.R. § 3.2600(e). The DRO's "review decision . . . will include a summary of the evidence, a citation to pertinent laws, a discussion of how those laws affect the decision, and a summary of the reasons for the decision." 38 C.F.R. § 3.2600(d). Finally, "[u]nless a claimant withdraws his or her [NOD] as a result of" the DRO process, "VA will proceed with the traditional appellate process by issuing a[n SOC]." 38 C.F.R. § 3.2600(f).

The *VBA Appeals and Reviews Manual, M21-5* (*VBA Manual*), provides further illustration of the DRO process. That document reveals that, after any additional development is completed, the DRO evaluates the evidence and (1) "upholds or overturns the original decision"; (2) "works with the appellant and representative to [] identify and clarify the issue(s), and [] fully explain[s] the decision in an effort to resolve the appellant's disagreement"; and (3) if the DRO does not fully grant the benefit sought, "begins to prepare the appeal for . . . Board . . . review by sending a[n SOC]." VBA MANUAL, ch. 7, § C.1.a (last updated May 2022). The *VBA Manual* further

---

[5] The Court clarifies that, although § 3.2600 remains essentially substantively unchanged between 2005 and today, *compare* 38 C.F.R. § 3.2600 (2005), *with* 38 C.F.R. § 3.2600 (2025), references to § 3.2600 hereafter are to the 2005 version, unless otherwise noted.

[6] Section 3.2600(a) currently provides for "a right to a review of [a] decision," which "will be conducted by a Veterans Service Center Manager, Pension Management Center Manager, or [DRO], at VA's discretion." 38 C.F.R. § 3.2600(a) (2025). The Court's reference to DROs should be read as including those managers.

[7] In addition, the regulation currently provides that, "[u]pon the request of the claimant, the reviewer will conduct a hearing under the version of § 3.103(c) of this chapter predating Public Law 115-55." 38 C.F.R. § 3.2600(c) (2025).

6

reflects that "[a] DRO decision is final and binding on all ROs and is not subject to revision on the same factual basis, except by the Board or as provided under [§] 3.105(a)." *Id.* at § C.3.d.

### 3. CUE

Pursuant to 38 U.S.C. § 511(a), "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." Section 5109A in turn provides that "[a] decision by the Secretary . . . is subject to revision on the grounds of [CUE]." 38 U.S.C. § 5109A; *see* 38 C.F.R. § 3.105(a) ("At any time after a decision is final, the claimant may request . . . review of the decision to determine if there was a clear and unmistakable error in the decision."); *see also Dittrich v. West*, 163 F.3d 1349, 1352 (Fed. Cir. 1998) (explaining that section 5109A "basically codified its predecessor regulation, 38 C.F.R. § 3.105(a)"). A request to revise a final RO decision based on CUE is a collateral attack on that decision. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 698 (Fed. Cir. 2000), *overruled on other grounds by Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360 (Fed. Cir. 2020) (en banc).

A "final . . . decision" is an "indispensable prerequisite for revision on the basis of CUE," *Richardson v. Nicholson*, 20 Vet.App. 64, 71 (2006), and thus, "a CUE [motion] . . . cannot lie as to a decision that is still open to direct review," *May v. Nicholson*, 19 Vet.App. 310, 317 (2005) (emphasis omitted), *aff'd*, 208 F. App'x 924 (Fed. Cir. 2006). "If there is no final decision, there can be no CUE; and the Board would [be] required to dismiss the CUE motion in its entirety." *Lang v. Wilkie*, 971 F.3d 1348, 1352 (Fed. Cir. 2020) (citation omitted). Importantly, finality is only necessary for *claimant-initiated motions for revision based on CUE*, like the one now before us. *See Young v. Wilkie*, 31 Vet.App. 51, 55-56 (2019) (finding that VA-initiated CUE pursuant to 38 C.F.R. § 3.2600(e) may be lodged against a decision open on direct appeal); *see also Westervelt v. Collins*, 38 Vet.App. 206, 215 (2025) (reaffirming the Court's holding in *Young* that "§ 3.2600(e) expressly provides for CUE-based revision of non-final decisions").

Although the word "[f]inality is variously defined," for purposes of collateral attack, "finality attaches when a claim becomes unappealable on direct review." *May*, 19 Vet.App. at 316 (emphasis omitted). In the legacy system, a decision of the AOJ generally becomes final if an appellant, after receiving an SOC, does not perfect his or her appeal by filing a Substantive Appeal. *See* 38 U.S.C. § 7105(d) (2000 & Supp. III 2004, Supp. V 2006); *Roy v. Brown*, 5 Vet.App. 554, 555-56 (1993); *Cuevas v. Principi*, 3 Vet.App. 542, 546 (1992). *But see Percy v. Shinseki*,

7

23 Vet.App. 37, 45 (2009) (holding that timely filing a Substantive Appeal is not a jurisdictional requirement and that VA may waive timeliness).

As to the merits of a CUE motion, CUE is established when the following conditions are met: First, either (1) the correct facts in the record were not before the adjudicator or (2) the statutory or regulatory provisions in existence at the time were incorrectly applied. *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be "undebatable," not merely "a disagreement as to how the facts were weighed or evaluated." *Russell v. Principi*, 3 Vet.App. 301, 313-14 (1992); *see Hillyard v. Shinseki*, 24 Vet.App. 343, 349 (2011), *aff'd*, 695 F.3d 1257 (Fed. Cir. 2012). Finally, the commission of the alleged error must have "manifestly changed the outcome" of the decision being attacked on the basis of CUE at the time that decision was rendered. *Russell*, 3 Vet.App. at 313-14; *see Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (expressly adopting the "manifestly change[d] the outcome" language in *Russell*); *see also King v. Shinseki*, 26 Vet.App. 433, 442 (2014) ("Whether it is reasonable to conclude that the outcome would have been different is not the standard that must be met for a motion alleging [CUE] to succeed. . . . [T]he error [must] be 'undebatable' and . . . must have 'manifestly changed the outcome' of the decision." (citing *Russell*, 3 Vet.App. at 313)), *aff'd sub nom. King v. McDonald*, 599 F. App'x 957 (Fed. Cir. 2015).

"CUE is a very specific and rare kind of 'error'. . . of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error." *Fugo v. Brown*, 6 Vet.App. 40, 43 (1993) (emphasis omitted). "[I]f it is not absolutely clear that a different result would have ensued," based upon the facts and law that were understood at the time of the decision, then any error that may have occurred in a final Board or RO decision is not clear and unmistakable. *Id.* at 44. The Court's review of the Board's determination on the existence of CUE is limited to whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or unsupported by adequate reasons or bases. 38 U.S.C. §§ 7104(d)(1), 7261(a)(3); *see Eddy*, 9 Vet.App. at 57. That standard of review, however, "'contemplates de novo review of questions of law,'" including whether an applicable law or regulation was correctly applied. *Joyce v. Nicholson*, 19 Vet.App. 36, 43 (2005) (quoting *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004)).

8

*4.* Mayfield *and* Prickett

Pertinent to whether an SOC may constitute a decision, both this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have issued decisions dealing with questions of proper notice under the Veterans Claims Assistance Act (VCAA), which requires that a claimant be provided notice of the information and evidence necessary to substantiate his or her claim prior to the initial decision.[8] In *Mayfield v. Nicholson* (*Mayfield I*), the Federal Circuit held that VA's failure to provide predecisional notice could have been "cured by the Board's remand following the enactment of the VCAA for a new VCAA notification *followed by readjudication* of Mrs. Mayfield's claim." 444 F.3d 1328, 1334 (Fed. Cir. 2006) (emphasis added); *see Prickett I*, 20 Vet.App. at 376 (explaining that, under *Mayfield I*, "VA may cure timing defects" in VCAA notice by "[t]he issuance of a fully compliant VCAA notification, followed by . . . readjudication of the claim"). Although the Federal Circuit in that case characterized SOCs as "post-decisional communications" for VCAA notice purposes, in that they are issued after the initial adjudication on a claim, that court also acknowledged that the purpose of an SOC is "to *advise the claimant of the decision* rendered on the claim and to facilitate review of that decision." *Mayfield I*, 444 F.3d at 1333, 1334 (emphasis added). The Federal Circuit ultimately remanded the matter on other grounds, *see id.* at 1337, and when the matter returned nearly 18 months later, the Federal Circuit "reject[ed] [Mrs.] Mayfield's assertion that the plain language of 38 C.F.R. § 19.31(a)[9] precludes a[n] SSOC from serving as a readjudication decision." *Mayfield v. Nicholson* (*Mayfield II*), 499 F.3d 1317, 1323 (Fed. Cir. 2007). The Federal Circuit explained that § 19.31(a) permits an SSOC to "announce readjudicatory decisions of the VA," given that the regulation provides for an SSOC to "be furnished under a scenario where . . . the [AOJ] receives additional pertinent evidence after issuance of a[n] SOC and before the appeal is certified to the Board." *Id.* at 1324.

In *Prickett*, the appellant argued that, after issuing VCAA-compliant notice, VA needed to issue a new rating decision—rather than an SOC—to comply with the readjudication requirement of *Mayfield I*. 20 Vet.App. at 376. This Court rejected that argument, "refus[ing] to interpret the

---

[8] Specifically, the VCAA, codified in relevant part at 38 U.S.C. § 5103(a), provides that VA must inform a claimant of (1) the information and evidence not of record that is necessary to substantiate the claim, (2) which portion of that information and evidence, if any, that the claimant is expected to provide and, (3) which portion of that information and evidence, if any, that VA will seek to obtain.

[9] Section 19.31(a) outlines the "[p]urpose and limitations" of a Supplemental Statement of the Case (SSOC). 38 C.F.R. § 19.31(a) (2007), (2025).

9

Federal Circuit's statement in *Mayfield* [*I*] so narrowly as to require VA to start the claims process anew." *Id.* at 377. The Court explained as follows:

> VA's adjudicatory process includes established measures to ensure that a claimant does not have to go back to the beginning of the process when a defect in the process has taken place or additional information or evidence has been presented. Specifically, the process relies on reviews and determinations made by the VA ROs, the DROs, and the [v]eterans [s]ervice [c]enter managers . . . . Such determinations must be made in compliance with the same applicable VA due process and notification requirements that are required of initial rating decisions. As long as a determination is made in compliance with those requirements, we see no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC.

*Id.* (citations omitted). The Court concluded that the SOC at issue "clearly indicate[d] that Mrs. Prickett's service-connection claim for the cause of her husband's death had been properly readjudicated following VA's attempts to cure a timing-of-notice defect." *Id.* Specifically, the Court found that the SOC "informed Mrs. Prickett that after a review of the evidence received before and after the May 2001 notification letter, her service-connection-cause-of death claim remained denied" and "provided a statement of reasons or bases for that denial," and therefore the SOC "complied with all applicable due process and notification requirements." *Id.* The Court also rejected the appellant's assertion that a readjudication in an SOC deprived her of her guaranteed one review on appeal under 38 U.S.C. § 7104(a) in light of her ability to pursue her appeal to the Board following an SOC or SSOC. *Id.*; *see* 38 U.S.C. § 7105(d)(3) (2000 & Supp. V 2006).

### B. Board Decision

In the decision on appeal, the Board first noted that this appeal stems from the February 2021 RO decision. R. at 6. The Board then acknowledged its prior dismissal of the appellant's CUE motion and explained that the parties had agreed in the JMR that (1) "the February 2006 [DRO-]SOC was the last final decision on [the appellant's PTSD] claim"; (2) "the February 2006 [DRO-]SOC is subject to revision based on CUE"; and (3) "the Board should consider the CUE allegations on the merits." R. at 8-9; *see* R. at 6. The Board determined that "[t]hese agreements constitute the law of the case" and concluded that it was bound by those agreements. R. at 9.

Turning to the merits of the CUE motion, the Board explained that the appellant had averred "that the RO committed legal and factual errors in finding that the available medical evidence was insufficient to confirm a link between current symptoms and in-service stressor[s]," specifically citing October and November 2004 psychiatric treatment records and December 2004

10

and April 2005 reports from his treating psychiatrist. R. at 10. The Board found, however, that the DRO in February 2006 did not commit CUE "in finding that the [appellant's] PTSD was not related to, or caused by, stressors related to service." R. at 11. The Board provided the following discussion:

> The evidence of record at the time of the February 2006 SOC included treatment records and statements from [the VA psychologist] indicating that the [appellant's] PTSD was related to service, but also October 2003 VA treatment records indicating that [his] PTSD was caused by stressors relating to his post[]service periods of incarceration. The February 2006 SOC explained in detail why it found the positive medical evidence from [the VA psychologist] less probative than the VA treatment records relating the [appellant's] PTSD to his reported stressors during his post[]service periods of incarceration. As there was evidence both in support of and against a finding that the [appellant's] PTSD was related to his reported in-service stressors of record at the time of the February 2006 SOC, the [appellant's] contentions are essentially a disagreement regarding how the RO weighed the evidence in the February 2006 SOC. Disagreement as to how the facts were weighed or evaluated does not constitute CUE.

*Id.* The Board therefore denied the appellant's motion to revise the February 2006 DRO-SOC on the basis of CUE. R. at 12.

### C. Parties' Arguments

#### 1. Initial Briefing

In his opening brief, the appellant argued that "[t]he Board erred in finding that the correct facts were before [the DRO at the time of] the February 2006 [DRO-]SOC." Appellant's Brief (Br.) at 6. In that regard, he asserted that the DRO overlooked evidence that he had difficulties at work during service and that he had been treated for a psychiatric condition before his 2000 incarceration. *Id.* at 7-8, 9-10. Additionally, he averred that the DRO improperly rejected the January 2005 VA psychologist's report. *Id.* at 8-9, 10-11. He asked the Court to "reverse the Board's denial of CUE in the February 2006 [DRO-]SOC [because he] has shown that the correct facts were not before . . . VA and, had they been, he would have been entitled to service connection." *Id.* at 11.

In response, the Secretary contended that the appellant failed to address the proper standard of review for CUE matters because he made no argument as to how the Board's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Secretary's Br. at 9-10. The Secretary further averred that the appellant's arguments were disagreements with the way the DRO weighed the evidence, which cannot demonstrate CUE. *Id.* at 10. Moreover, the

11

Secretary asserted that "by focusing on the [D]RO's adjudication (and its [purported] errors), [the appellant] fail[ed] to express the error he believes the Board committed in failing to find CUE." *Id.* Finally, the Secretary maintained that the Board articulated a satisfactory basis for its decision, and therefore he urged the Court to affirm the Board's decision. *Id.* at 13-15. In his reply brief, the appellant essentially reiterated the arguments from his opening brief and additionally asserted that the Board's decision was arbitrary and capricious. Reply Br. at 1-4.

*2. Supplemental Briefing*[10]

a. Whether a DRO-SOC may be a final decision

As to the central question in this appeal—whether a DRO-SOC may be a final decision for the purposes of CUE—the Court ordered supplemental briefing and directed the parties to consider *Mayfield I*, 444 F.3d at 1333 (referring to SOCs as "post-decisional communications"), *Mayfield II*, 499 F.3d at 1323 (holding that, under certain circumstances, "a[n] SSOC may properly announce the VA's readjudication decision"), and *Prickett I*, 20 Vet.App. at 377 ("As long as a determination is made in compliance with [the same applicable VA due process and notification requirements that are required of initial rating decisions], we see no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC."). *Watts v. McDonough*, U.S. Vet. App. No. 23-3900 (Aug. 20, 2024) (unpublished order). In response, the appellant argued that (1) *Mayfield I* pertains to proper notice under the VCAA and "did not deal with . . . finality for the purpose of CUE," Appellant's Oct. 3, 2024, Supp. Memo. at 3; (2) "*Mayfield II* supports [a conclusion] that the [DRO-]SOC in this case was a final decision for purposes of CUE," *id.* at 4; and (3) *Prickett* stands for the proposition that, "if [a document] meets the requirements of a final decision, the label . . . does not determine jurisdiction for the purposes of CUE[,] so long as the decision contain[s] sufficient notice," *id.* at 6. In sum, he asserted that "an SOC can be a final decision when it provides the same rights as a[ rating decision] otherwise would provide." *Id.*

Notably, however, the appellant also argued for the first time—and contrary to the contentions in his opening brief—that the February 2006 DRO-SOC at issue in *this case* is *not* a final decision for the purposes of CUE. *Id.* at 1. He reasoned that the DRO-SOC "combined [the] DRO and SOC process[es,] which violated the history and text of 38 C.F.R. § 3.2600(f)," which reflect "that the DRO review was an 'additional, optional procedure to be conducted, if at all,

---

[10] In light of the disposition outlined below, it is not necessary to address each issue covered by supplemental briefing; thus, the Court will summarize only the pertinent contentions.

12

between a claimant's filing [an NOD] and VA's issuance of [an SOC]." *Id.* at 8 (quoting 66 Fed. Reg. at 21,871 (emphasis omitted)). As a result, he posited that the DRO-SOC "was not a final decision" and instead, the matter is "still pending the issuance of [an] SOC." *Id.* at 11. Yet the appellant maintained that "[t]he Board's jurisdiction, and thus this Court's jurisdiction, is derived from a valid [April 2021] NOD" appealing the RO's February 2021 denial of his motion for revision based on CUE. *Id.* at 10. In short, the appellant argued, "[a]s a valid NOD exists in this case, . . . the Board had, and the Court has, jurisdiction to review whether a CUE exists in this case." *Id.* Finally, the appellant noted that "'[c]ourts may not in any case, even in the interest of justice, extend their jurisdiction where none exists,'" *id.* at 9 (quoting *Skinner v. Derwinski*, 1 Vet.App. 2, 3 (1990)), and that the Court has an independent duty to determine whether it has jurisdiction in a particular case, *id.* at 9-10.

The Secretary averred that, because the SOC in this case was issued as part of a DRO decision and the appellant did not appeal, the DRO-SOC is a final decision subject to collateral attack. Secretary's Oct. 3, 2024, Supp. Memo. at 1-2. In this regard, he explained that, under the DRO process, the claim is reviewed de novo, and the resulting decision constitutes a new decision that, if not appealed, becomes final and subject to a CUE motion. *Id.* at 3 (citing VBA MANUAL, ch. 7, § C.3.d). The Secretary explained, however, that, if a claimant continues to pursue an appeal to the Board after receiving a DRO-SOC, the DRO-SOC is no longer open to collateral attack. *Id.* at 4-5. Further, the Secretary noted that *Mayfield I* "does not address DRO decisions issued within an SOC or CUE motions," *id.* at 6; *Mayfield II* "does not directly address CUE motions or whether an SOC may be a final decision for purposes of CUE," *id.*; and, although *Prickett I* "did involve a DRO decision issued in the form of an SOC," that opinion "did not address the distinction between a traditional SOC and an SOC issued as a part of the DRO process," *id.* at 6, 7. The Secretary asserted that the *Mayfield* decisions and *Prickett* are thus not controlling, *id.* at 5-7, but he nevertheless relied on *Prickett II* for the proposition that "a DRO decision may be issued in the form of an SOC without a separate DRO decision," *id.* at 3-4 (citing *Prickett II*, 257 F. App'x at 293). Additionally, the Secretary distinguished a DRO-SOC based on de novo review from a "traditional" SOC, which he asserted "merely provides a summary and notice of decisions already made, and thus would *not* be an independent 'decision' subject to a CUE challenge." *Id.* at 4 (citing 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 3.2600(b)); *see id.* at 7-8.

13

b. Effect of the JMR

As noted above, a claimant-initiated CUE challenge may only lie against a final decision, *May*, 19 Vet.App. at 317, and "where the Board does not have . . . jurisdiction, then neither does the Court," *King*, 19 Vet.App. at 409. Accordingly, the Court asked the parties to consider the effect of the Clerk's September 2022 order granting the parties' JMR—in which they agreed that the February 2006 DRO-SOC was the last final decision on the matter and directed the Board on remand to address the merits of the appellant's CUE challenge. *Watts v. McDonough*, U.S. Vet. App. No. 23-3900 (Oct. 21, 2024) (unpublished order).

The appellant suggested that the February 2006 DRO-SOC "works to circumvent the additional review provided in 38 U.S.C. § 7105(d)(1) (2007), and implemented by the Secretary in 38 C.F.R. § 3.2600," and thus "was not a[n] SOC," and that it would not be inconsistent with the JMR for the Court to remand for the Board to discuss whether "the SOC in this case had the required information and rights associated with a[n] SOC." Appellant's Jan. 21, 2025, Supp. Memo. at 6, 11. Nevertheless, he acknowledged that "it[ is] not . . . the substance of the decision that is prejudicial," but rather that DRO review is supposed to be "separate from, and come[] before, the SOC." *Id.* at 12, 13.

For his part, the Secretary asserted that the JMR "profoundly affect[s]" the Court's authority in this case. Secretary's Apr. 7, 2025, Supp. Memo. at 7. Specifically, he argued that the order granting the JMR "is binding and conferred upon the Secretary (and the Board) a duty to comply with the terms of the JMR"—that is, to address the CUE challenge on the merits. *Id.* (citing *Forcier v. Nicholson*, 19 Vet.App. 414 (2006)). The Secretary acknowledged that the law-of-the-case doctrine "does not bar reconsideration of jurisdictional issues," but he maintained that "the questions of whether or not the February 2006 [DRO-]SOC was a final decision and/or whether VA complied with § 3.2600 are not jurisdictional issues," but rather are "claims processing rules" that the appellant knowingly waived through counsel in the JMR. *Id.* at 8 (emphasis omitted); *see id.* at 5-6. He points out that "[the a]ppellant, through the same attorney who is representing him in the current appeal, . . . negotiated" the JMR. *Id.* at 5.

The appellant refuted the Secretary's assertion that the Court is bound by the parties' agreement in the JMR that the DRO-SOC is a final decision subject to collateral attack; he contended that this position "reflects a misunderstanding of the law regarding joint motions." Appellant's May 20, 2025, Supp. Memo. at 2. In this regard, he noted that the Clerk's order granting

14

the JMR does not reflect "an intent to incorporate the [JMR]," and he argued that the Court has held in similar circumstances that "the grant of the joint motion 'was administrative rather than adjudicatory.'" *Id.* (quoting *Breeden v. Principi*, 17 Vet.App. 475, 479 (2004) (per curiam order)). Accordingly, he maintained that the Court's order granting the JMR "does not carry the legal weight" the Secretary places on it. *Id.* He further posited that the finality of the DRO-SOC is a jurisdictional issue that could not be waived or conceded to by the parties. *Id.* at 1, 3.

### D. Discussion

#### 1. Decisions Subject to Collateral Attack

This appeal raises the question of whether an SOC that includes a DRO review determination pursuant to § 3.2600(d) may constitute a decision for purposes of collateral attack. As to that question, the Board acknowledged in the decision on appeal that it previously had concluded that the appellant, by identifying error in an SOC, had not raised a CUE challenge as to "a prior final rating decision." R. at 6; *see* R. at 70. Relying on the parties' September 2022 JMR, however, the Board found that the "February 2006 SOC [was] the last final denial of service connection for PTSD." R. at 5; *see Stegall v. West*, 11 Vet.App. 268, 271 (1998) (holding that a remand by the Board or this Court "confers on the [appellant] . . . , as a matter of law, the right to compliance with the remand orders," and the Board errs when it fails to ensure compliance with the terms of such a remand).

Nevertheless, the Court must assure itself that such a DRO-SOC may be a "decision" for purposes of a CUE motion, because if such a CUE motion is barred as a matter of law, both the Board and the Court would lack jurisdiction to address the merits. *See Encarnacion v. McDonough*, 36 Vet.App. 194, 201 (2023) ("A decision is required to confer jurisdiction, and there is no action the Agency can perform to cure a lack of jurisdiction." (citing *Hall v. McDonough*, 34 Vet.App. 329, 332 (2021)), *overruled on other grounds by Kernz v. McDonough*, 36 Vet.App. 372 (2023) (en banc); *Clemons v. Shinseki*, 23 Vet.App. 1, 3 (2009) (per curiam order) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); *Hayre v. Principi*, 15 Vet.App. 48, 50 (2001) (holding that the Court "must affirmatively satisfy itself that it has authority to act"), *aff'd*, 78 F. App'x 120 (Fed. Cir. 2003). That is a legal question that the Court reviews de novo. *Evans v. Shinseki*, 25 Vet.App. 7, 10 (2011) ("[T]he Court exercises de novo review over Board determinations that are critical to its jurisdiction.").

15

As noted above, section 5109A provides that "[a] *decision* by the Secretary . . . is subject to revision on the grounds of [CUE]." 38 U.S.C. § 5109A (emphasis added). The Federal Circuit explained that this statutory section "basically codified its predecessor regulation, 38 C.F.R. § 3.105(a)," *Dittrich*, 163 F.3d at 1352, which in turn "relate[d] only to [CUE] review of decisions of the [AOJ] . . . and not to those of the [Board]." *Donovan v. Gober*, 10 Vet.App. 404, 407 (1997), *aff'd sub nom. Donovan v. West*, 158 F.3d 1377 (Fed. Cir. 1998). Since then, the Secretary, pursuant to his authority in 38 U.S.C. § 501(a) to prescribe regulations, created an additional administrative layer in the legacy appeals process—DRO review—that is available to "[a] claimant who has filed [an NOD] . . . with a decision of an [AOJ] on a benefit claim." 38 C.F.R. § 3.2600(a).

The DRO process permits a claimant to "obtain a de novo review (a new and complete review with no deference given to the decision being reviewed)." 66 Fed. Reg. at 21,871. Once a claimant selects DRO review, the DRO determines what, if any, additional development is necessary and may grant the benefit sought in the NOD; the DRO may not revise the underlying decision in a way that is less favorable to the claimant, except based on CUE. 38 C.F.R. § 3.2600(c), (d), (e). The DRO then provides "[a] review *decision*" that must "include a summary of the evidence, a citation to pertinent laws, a discussion of how those laws affect *the decision*, and a summary of the reasons *for the decision*." 38 C.F.R. § 3.2600(d) (emphases added); *see* VBA MANUAL, ch. 7, § C.3.d (reflecting that "[a] *DRO decision is final and binding* on all ROs and is not subject to revision on the same factual basis, except by the Board or as provided under [§] 3.105(a)" (emphasis added)). Finally, "[u]nless a claimant withdraws his or her [NOD] as a result of" the DRO process, "VA will proceed with the traditional appellate process by issuing a[n SOC]." 38 C.F.R. § 3.2600(f). Under that traditional legacy process, a claimant generally must file a Substantive Appeal to perfect an appeal to the Board. *See* 38 U.S.C. § 7105(d)(3) (2000 & Supp. III 2004, Supp. V 2006).

All this reflects that the DRO provides an intermediate level of review—*after* a traditional RO decision and *before* any Board decision—and that review results in *a new decision*. Indeed, this Court has consistently treated DRO determinations as decisions of the Secretary that are reviewable by the Board. *See, e.g.*, *Westervelt*, 38 Vet.App. at 214; *Young*, 31 Vet.App. at 55; *Anderson v. Shinseki*, 22 Vet.App. 423, 427-28 (2009); *see also* 38 U.S.C. § 511(a), 7104(d); *Encarnacion*, 36 Vet.App. at 200 ("A 'decision' is a 'judicial or agency determination after consideration of the facts and the law.'" (quoting BLACK'S LAW DICTIONARY 511 (11th ed. 2019)));

16

*cf. Cardoza v. McDonough*, 37 Vet.App. 407, 412 (2024) (concluding that a Board letter adjudicating a legal question may be considered a "decision"). And, a DRO determination—which reflects VA's decision under a law that affects the provision of benefits—fits comfortably within the language permitting CUE review of "a decision by the Secretary." 38 U.S.C. § 5109A; *see Williams v. Taylor*, 529 U.S. 420, 431 (2000); *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994).

As to whether such a DRO decision may be included in an SOC, the decisions in *Mayfield* and *Prickett* are instructive. The *Mayfield* and *Prickett* decisions stand for the proposition that a readjudication decision—including a DRO decision—may be announced in an SOC or SSOC, provided that all notice and due process requirements are met. *See Mayfield II*, 499 F.3d at 1324; *Prickett I*, 20 Vet.App. at 377. For example, in *Prickett I*, the appellant argued that, after issuing VCAA-compliant notice, VA needed to issue a new rating decision—rather than an SOC—to comply with the readjudication requirement of *Mayfield I*. 20 Vet.App. at 376. This Court rejected that argument, "refus[ing] to interpret the Federal Circuit's statement in *Mayfield* [*I*] so narrowly as to require VA to start the claims process anew." *Id.* at 377. The Court explained that the "VA[] adjudicatory process . . . relies on reviews and determinations made by the VA ROs, [and] the DROs," and that "we see *no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC*." *Id.* (emphasis added). Similarly, on appeal, the Federal Circuit acknowledged Mrs. Prickett's argument that "the review decision and the SOC are two separate documents with one following the other" and explained that, although § 3.2600 "does refer to a review decision and an SOC as separate documents," "VA could properly *issue its decision within an SOC* without preparing a separate document," *Prickett II*, 257 F. App'x at 293 (emphasis added).

In other words, both this Court and the Federal Circuit have explained that a decision that occurs after the initial AOJ adjudication need not be announced in a rating decision but instead may be included in an SOC. Indeed, the parties appear to agree on this issue. *See* Appellant's Oct. 3, 2024, Supp. Memo. at 6 ("Mr. Watts sees 'no difference whether the officer issues a decision within an SOC or issues the decision and the SOC separately.'" (quoting *Prickett II*, 257 F. App'x at 293)); Secretary's Oct. 3, 2024, Supp. Memo. at 5-7 (stating that, although these cases are not controlling, they do provide that a decision may be issued in an SOC). The Court

17

thus holds that an SOC containing a DRO's review decision may be a "decision" subject to collateral attack under section 5109A. Because it is undisputed that the February 2006 SOC in question here contained the DRO's review decision, *see* Appellant's Jan. 21, 2025, Supp. Memo. at 11; Secretary's Oct. 3, 2024, Supp. Memo. at 1, 4, and because, as discussed below, the appellant waived his only contention as to whether that document also should be construed as including an SOC, we hold that the February 2006 DRO-SOC at issue in this case may be challenged for CUE so long as it is final for purposes of such a collateral attack. The Court turns next to finality.

### 2. Finality

Here, the Board found that the February 2006 DRO-SOC was "the last *final* denial of service connection for PTSD," R. at 5 (emphasis added), explaining that it was bound by the parties' agreement in the September 2022 JMR in that regard, R. at 9. As noted above, the appellant argues, for the first time on appeal to this Court, that the DRO-SOC never became final because of an alleged procedural violation—specifically, that VA failed to separately issue both a DRO decision and an SOC.[11] *See* Appellant's Oct. 3, 2024, Supp. Memo. at 1. He contends that combining these Agency actions in a single document "violated the history and text of 38 C.F.R. § 3.2600(f)[,] which indicates that the DRO review was an 'additional, optional procedure to be conducted, if at all, between a claimant's filing [an NOD] and VA's issuance of [an] SOC.'" *Id.* at 8 (quoting 66 Fed. Reg. at 21,871 (emphasis omitted)). The Secretary points out that the appellant, represented at all times by current counsel, did not dispute the finality of the February 2006 DRO-SOC—which he had attacked for CUE—until his first supplemental memorandum. Secretary's Apr. 7, 2025, Supp. Memo. at 6-7. He further avers that whether VA complied with § 3.2600 is not a jurisdictional issue and that the appellant knowingly waived that claim-processing rule. *Id.* at 8.

To the extent that the Secretary objects to the late-raised nature of the appellant's challenge to the finality of a decision that he previously attacked based on CUE, the Federal Circuit's opinion in *Lang* is instructive. There, the appellant attacked a rating decision on the basis of CUE and,

---

[11] To be clear, the appellant is not contending that the DRO-SOC at issue in this case failed to provide him with any information required by section 7105(d), acknowledging instead that "the SOC substantive requirements and the DRO substantive requirements are essentially the same." Appellant's Jan. 21, 2025, Supp. Memo. at 12. Indeed, in his supplemental pleadings, the appellant does not cite any particular language in the February 2006 DRO-SOC, nor does he assert that or explain how his concern with the format of the SOC could have prevented the appeal period from running. *Cf. Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992) (holding that the period in which to file a formal appeal did not begin to run because the veteran was not furnished with an SOC).

when the matter reached this Court, he argued for the first time that the rating decision had never become final and thus was not subject to collateral attack. 971 F.3d at 1351-52. Before the Federal Circuit, the Secretary asserted that, because Mr. Lang's "substantive argument to the Board had been predicated on the assertion of CUE," this Court *exceeded its jurisdiction* in "consider[ing Mr.] Lang's argument that the . . . rating decision [was] still not final." *Id.* at 1352. The Federal Circuit noted that this Court "has broad discretion to address new arguments that were not raised before the Board," *id.* (citing *Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000)), and that court characterized Mr. Lang's contention not as a jurisdictional hurdle to be overcome, but as a "procedural argument . . . . that no CUE inquiry need occur because the . . . rating decision is not final," *id.* The Federal Circuit then concluded that it was "within [this Court's] *discretion* to consider [the] argument," explaining that "[t]he Board must establish the finality of the . . . rating decision because only final decisions are subject to CUE." *Id.* (emphasis added) (citation omitted).[12] Notably, the Federal Circuit in *Maggitt* had explained that, although this Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the court, it is not compelled to do so in every instance." 202 F.3d at 1377. Applying those cases leads the Court to the conclusion that, even though the appellant in this case asserted before the Agency that the February 2006 DRO-SOC contained CUE, *see* R. at 8, we have *discretion* to consider his contention, raised for the first time to the Court, that the decision is not final, but we are not required to do so.[13]

Here, the Court declines to consider the late-raised finality argument for reasons not discussed in *Lang* or *Maggitt*—a prior JMR granted by the Court. *See Carter v. Shinseki*, 26 Vet.App. 534, 541 (2014) ("A [JMR], when drafted properly, identifies the essential,

---

[12] By contrast, the Federal Circuit had previously explained that a court does not have discretion to disregard an apparent jurisdictional defect. *See Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[A] potential jurisdictional defect may be raised . . . at any stage in the proceedings, and, once apparent, *must be adjudicated*." (emphasis added)).

[13] The Court emphasizes that finality for the purposes of collateral attack is not, as the appellant suggests, "a jurisdictional predicate." Appellant's May 20, 2025, Supp. Memo. at 1. Neither section 5109A nor 38 U.S.C. § 7111—the two statutory provisions governing the revision of decisions for CUE—contains any language relating to finality; instead, the finality requirement for CUE matters is spelled out in a regulation, § 3.105. Accordingly, that requirement is not jurisdictional. *See Hayre*, 15 Vet.App. at 51 ("Jurisdiction must derive exclusively from a clear and unambiguous act of Congress." (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818 (1988))); *Hall*, 34 Vet.App. at 333 ("[R]egulations are not jurisdictional in nature as only Congress may confer or withdraw jurisdiction."). That finality is not a jurisdictional requirement is also readily apparent because the Secretary has the authority to revisit decisions, final or otherwise, believed to be predicated on CUE. *See Young*, 31 Vet.App. at 55-56.

19

undisputed facts necessary for the adjudication of the claim; the relief sought; and most importantly, clear instructions to the Board as to what it is required to address, and what actions it is required to take, on remand."), *overruled on other grounds sub nom. Carter v. McDonald*, 794 F.3d 1342 (Fed. Cir. 2015). In the September 2022 JMR, the parties agreed that "vacatur and remand of the case is warranted because the Board erred in holding that the February 2006 SOC was not a final determination that is subject to revision based on CUE." R. at 56. The parties acknowledged that the February 2006 SOC had been issued by a DRO "as part of the [DRO] process," *id.*, and they expressly agreed that "the DRO decision [in the February 2006 SOC] was the last final decision on the claim," R. at 57. In support of that agreement, the parties cited *Prickett I* for the proposition that "'we see no need to draw a distinction as to whether an adjudicatory decision was issued in a rating decision or an SOC,'" *id.* (quoting *Prickett I*, 20 Vet.App. at 377), and *Prickett II* for the notion that "'VA could properly issue its decision within an SOC without preparing a separate document,'" *id.* (quoting *Prickett II*, 257 F. App'x at 293). In short, the parties concurred that, "[b]ecause the February 2006 SOC was a DRO decision, which, when not appealed, became the last final decision in the claim stream, and because that decision was not subsumed in the subsequent 2017 Board decision, . . . the February 2006 SOC is subject to revision based on CUE." R. at 58.

The only procedural concern that the appellant now identifies with regard to the February 2006 DRO-SOC is that VA purportedly contravened § 3.2600 by failing to issue two separate documents[14]—a DRO decision upholding the March 2004 RO decision and an SOC. Appellant's Oct. 3, 2024, Supp. Memo. at 8. Any claim-processing prescriptions in that regulation, however, are not jurisdictional in nature and thus may be waived, including in a JMR. *See Bolds v.*

---

[14] The appellant also argued that the Clerk's September 2022 order granting the parties' JMR "'was administrative rather than adjudicatory'" because the order did not incorporate the JMR by reference. Appellant's May 20, 2025, Supp. Memo. at 2 (quoting *Breeden*, 17 Vet.App. at 479). This argument is without merit in light of the Court's subsequent decision in *Forcier*, which held that "[t]he decision in *Breeden* is . . . binding authority only with respect to cases where there is no final Board decision addressing the terms of the [JMR] not incorporated by reference." 19 Vet.App. at 424. The Board in the March 2023 decision on appeal expressly acknowledged and addressed the terms of the JMR in this case, despite the fact that the Clerk's order did not incorporate the JMR by reference. *See* R. at 8-9. Accordingly, here, as in *Forcier*, "we have the benefit of possessing jurisdiction to review a final Board decision that has already addressed the terms of the unincorporated joint motion." *Forcier*, 19 Vet.App. at 424.

20

*McDonough*, 37 Vet.App. 359, 366 (2024); *see also Hall*, 34 Vet.App. at 332-33.[15] "To waive a procedural right, a party must possess such a right; have knowledge of that right; and intend, voluntarily and freely, to relinquish or surrender that right." *Bolds*, 37 Vet.App. at 367. Here, given the reference to that part of *Prickett II* in which the Federal Circuit explained that § 3.2600 "does refer to a review decision and an SOC as separate documents," *Prickett II*, 257 F. App'x at 293; *see* 38 C.F.R. §§ 3.2600(d) (referencing a "review decision"), (f) (referencing an SOC); *see also* R. at 57, the Court concludes that the JMR reflects the appellant's understanding that the DRO process ultimately should result in two agency actions—a DRO review decision and an SOC. The JMR further reflects the parties' agreement that both of those actions could occur in a single document, in that they included "an unqualified and unequivocal statement," *Bolds*, 37 Vet.App. at 367, that "'VA could properly issue its decision within an SOC without preparing a separate document,'" R. at 57 (quoting *Prickett II*, 257 F. App'x at 293).

Although the JMR also reflects that the appellant's statements therein "shall not be construed as a waiver as to any rights or VA duties under the law *as to the matter being remanded*," R. at 59 (emphasis added), the only issue the parties agreed to remand was *the merits* of his CUE motion. Indeed, the parties specifically instructed "that the Board should consider the CUE allegations on the merits." R. at 58. Further, in the face of explicit language agreeing that a single document would suffice, it would be inconsistent to construe this waiver language as allowing the appellant to reserve any right to two separate documents. *See Bolds*, 37 Vet.App. at 369 (explaining that a "disclaimer" in a JMR "must be read, to the greatest extent possible, in a manner *consistent with* the other provisions of the [JMR]" (emphasis added)). Instead, because the appellant—represented by the same counsel who currently represents him before the Court—entered into a JMR in which he expressly agreed that the DRO decision did not need to be issued separately from the SOC, the Court concludes that he waived any procedural objections to the DRO's decision being included in the SOC. *See Clark v. O'Rourke*, 30 Vet.App. 92, 97 (2018) (citing *Del Rosario v. Peake*, 22 Vet.App. 400-03 (2009), for the proposition that the Court found in the first instance that the appellant's written submission to VA constituted a waiver); *see also Janssen v. Principi*,

---

[15] Although the appellant at times cites section 7105(d) as the basis for his procedural contention, that statutory subsection does not mention the DRO process, and the crux of the appellant's argument is that, by *regulation*, the DRO review decision is supposed to be a separate document from the SOC.

21

15 Vet.App. 370, 374 (2001) (per curiam) ("[U]nless there is a specific preclusion to doing so, parties are generally permitted to waive the application of statutes intended for their benefit.").[16]

In sum, the Board determined—albeit in reliance on the JMR—that the DRO-SOC became final. R. at 5. The appellant waived his only challenge to that finality determination—potential procedural violations of a nonjurisdictional regulation—in the September 2022 JMR. Neither party raises other arguments about how the DRO-SOC could still be open to direct appeal.[17] *See May*, 19 Vet.App. at 316. There is thus no basis for the Court to disturb the Board's factual finding as to finality. *See Daniels*, 10 Vet.App. at 480. Accordingly, the Court will proceed to the merits of the appellant's CUE motion. *See Hatfield v. McDonough*, 36 Vet.App. 97, 104 (2023) (explaining that the appellant "[did] not dispute that the . . . decision [attacked for CUE] was final," before the Court addressed his CUE arguments on the merits).

C. Revision of the February 2006 DRO-SOC Based on CUE

On appeal to this Court, the appellant "always bears the burden of persuasion." *Berger v. Brown*, 10 Vet.App. 166, 169 (1997); *see Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). The Court concludes that the appellant has not met that burden.

Here, the Board denied the appellant's CUE motion because, at the time of the February 2006 DRO-SOC, "there was evidence both in support of and against a finding that [his] PTSD was related to his reported in-service stressors," and because his arguments concerning the 2004 and 2005 medical records were "essentially a disagreement regarding how the RO weighed the evidence," which cannot constitute CUE. R. at 11. The appellant's CUE arguments in his opening brief primarily focused on what he views as errors in the facts the DRO set forth in February 2006.

---

[16] Additionally, the Board found, and the appellant does not dispute, that he conceded the factual question of the finality of the February 2006 DRO-SOC for the purposes of CUE. R. at 9; *see* R. at 58; *see also Daniels v. Gober*, 10 Vet.App. 474, 480 (1997). In this case, his concessions in the JMR *directly contradict* the arguments he now raises before the Court, and that if accepted, would nullify the agreement the parties reached in the JMR—leading to piecemeal litigation, which is not favored. *Carter*, 26 Vet.App. at 541; *see id.* at 542 ("Properly used, [a JMR] benefits the appellant, the Secretary, and the Court. Improperly or negligently used, however, it has just the opposite effect . . . in that it results in the waste of resources . . . and causes an unnecessary delay in resolving the matters complained of.").

[17] The Court acknowledges that, because timely filing a Substantive Appeal is not a jurisdictional requirement, there remains a possibility that the appellant could seek VA's waiver to directly appeal the DRO-SOC to the Board. *See Percy*, 23 Vet.App. at 45; *see also* 38 C.F.R. § 3.109(b) (2025) (providing that the "[t]ime limits within which claimants . . . are required to act to . . . challenge an adverse VA decision may be extended for good cause shown"). But neither party argues that this mere possibility prevents finality from attaching at this time for purposes of a collateral attack.

*See* Appellant's Br. at 7-9. At no point did the appellant acknowledge that he bears the burden of demonstrating that *the Board's* CUE determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3); *see* Appellant's Br. at 1-12. *But see* Reply Br. at 3 (requesting "reversal, granting that there was CUE in the 2006 [DRO-]SOC, and that the Board's contrary conclusion was arbitrary and capricious"); *Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review an argument first raised in the appellant's reply brief), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered.").

Moreover, rather than attempt to counter the Board's findings, the appellant simply restated the Board's or the DRO's findings and then argued that the evidence shows something different. For example, the appellant notes that "[t]he Board recognized the reports from [the VA psychologist] in 2005 but also noted the October 2003 VA record that PTSD was related to incarceration" and then asserts that "the October 2003 VA record did not actually diagnose PTSD" related to his incarceration and instead only indicated that it was probable. Appellant's Br. at 9. With respect to the DRO's finding that the evidence did not show that the appellant had difficulties with work in service, the appellant counters that when he "enlisted in 19[6]2 he was described as 'an outstanding recruit in every respect,' . . . whereas when he was discharged he was 'very irritable and ineffective.'"[18] *Id.* at 10 (first quoting R. at 1174; and then quoting R. at 1160). Although the appellant frames his argument as one that the correct facts were not before the DRO in February 2006, *see id.* at 7-12, the substance of his arguments reveals nothing more than a disagreement with the way the DRO weighed the evidence, which, as the Board explained, does not rise to the level of CUE, R. at 11; *see Russell*, 3 Vet.App. at 313-14; 38 C.F.R. § 20.1403(d)(3) (2025). Accordingly, the Court concludes that the appellant has not carried his burden of demonstrating that the Board's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3).

---

[18] To the extent that these are new CUE challenges to the February 2006 DRO-SOC, raised for the first time to the Court, the Court may not address them. *See Acciola v. Peake*, 22 Vet.App. 320, 325 (2008) ("When an appellant raises a new theory of CUE for the first time before the Court, the Court must dismiss for lack of jurisdiction." (citing *Sondel v. Brown*, 6 Vet.App. 218, 219-20 (1994))); *cf. Jarrell v. Nicholson*, 20 Vet.App. 326, 333 (2006) (en banc) ("[E]ach wholly distinct and different CUE theory underlying a request for revision is a separate matter and, when attacking a prior RO decision, each must be presented to and adjudicated by the RO in the first instance and, if not, the Board lacks jurisdiction over the merits of the matter.").

D. Summary

As explained above, the Court holds that, when a DRO review decision pursuant to § 3.2600 is included in an SOC, that document may constitute a decision by the Secretary that is subject to a CUE challenge if it has become final. Because it is undisputed that the February 2006 DRO-SOC in question here contained the DRO's review decision, and because the appellant waived the only contention he now raises as to whether that document could also have included an SOC and thus whether it became final, the Court concludes that the February 2006 DRO-SOC is a final decision that may be attacked for CUE under section 5109A. Nevertheless, we find that the appellant has not shown that the Board decision denying his CUE motion was arbitrary or capricious or unsupported by adequate reasons or bases. The Court will thus affirm the Board's decision.

## III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's March 3, 2023, decision is AFFIRMED.